# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 9, 2004        Decided January 28, 2005

No. 04-1129

ASSOCIATION OF ADMINISTRATIVE LAW JUDGES, ET AL.,
PETITIONERS

v.

FEDERAL LABOR RELATIONS AUTHORITY,
RESPONDENT

———

On Petition for Review of a Decision and Order of the
Federal Labor Relations Authority

———

*Sally M. Tedrow* argued the cause for petitioners. With her on the briefs was *James B. Coppess*.

*Mark D. Roth*, *Judith D. Galat*, *Gregory O'Duden*, *Barbara A. Atkin*, and *Timothy B. Hannapel* were on the brief of *amici curiae* American Federation of Government Employees, et al., in support of petitioner.

*James F. Blandford*, Attorney, Federal Labor Relations Authority, argued the cause for respondent. With him on the brief were *David M. Smith*, Solicitor, and *William R. Tobey*, Deputy Solicitor.

Before: GINSBURG, *Chief Judge*, and GARLAND, *Circuit*

*Judge,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: The Association of Administrative Law Judges (the Union) petitions for review of a decision by the Federal Labor Relations Authority holding that an employing agency of the United States Government need not bargain over a de minimis change in "conditions of employment," 5 U.S.C. § 7102(2). The Union argues this newly announced exception to the duty to bargain is both contrary to the terms of the Federal Service Labor-Management Relations Statute, 5 U.S.C. § 7101 et seq., and unreasonable in light of the Congress's purpose in enacting it.

The issue, which we resolve with deference to the Authority because it is charged with administration of the Statute, is whether "the Congress has taken a position so rigid that it will not admit of a de minimis exemption." *Envtl. Def. Fund, Inc. v. EPA*, 82 F.3d 451, 466 (D.C. Cir. 1996). In this regard, as the Authority points out, the Congress has specifically directed that "[t]he provisions of [the Statute] should be interpreted in a manner consistent with the requirement of an effective and efficient Government." 5 U.S.C. § 7101. In light of this pragmatic direction, we hold the Authority's interpretation of the Statute not to require bargaining over trivia is neither contrary to the text nor unreasonable in light of its purpose. Because the Authority here applied the de minimis exception to a truly insignificant change in the ALJs' conditions of employment, we deny the Union's petition for review.

## I. Background

In October 1999, each of the six ALJs employed in the Social Security Administration's Office of Hearings and

Appeals in Charleston, South Carolina was assigned a reserved parking space. One year later the agency, refusing the Union's request to bargain over the matter, unilaterally reassigned four of those spaces, leaving only two reserved spaces for the six ALJs to share. All six ALJs were still allowed free, unreserved parking in the same garage, and space was always available.

The Union filed an unfair labor practice charge with the Authority, and the General Counsel issued a complaint alleging the SSA had violated the Statute by refusing to bargain over a substantively negotiable change in a condition of employment. 5 U.S.C. § 7116(a)(1) & (5). After a hearing, an ALJ for the Authority upheld the complaint and ordered the agency to reinstate the ALJs' parking privileges.

In so doing, the ALJ followed longstanding practice with respect to a change in working conditions that was "substantively negotiable" -- meaning not within one of the "management rights" enumerated in § 7106: "[T]he extent of the impact of the change on unit employees has not been a factor or element in the analysis of whether an agency is obligated to bargain." On the other hand, an agency was not (and is not) obligated to bargain over the "impact and implementation" of a change it could make as a matter of management right unless the change "has more than a *de minimis* effect on the unit employees' conditions of employment." Here the ALJ volunteered that "if [SSA] were only obligated to bargain [over] impact and implementation, there might be a grave doubt that the impact was more than *de minimis*."

The SSA filed exceptions to the ALJ's decision, arguing "the Authority should apply the *de minimis* doctrine that has been used for impact and implementation bargaining to changes that are substantively negotiable." Recognizing that "the issue raised by the Agency ... [was] likely to be of concern to the

federal sector labor-management relations community in general," the Authority published in the Federal Register a call for amicus briefs addressed to the following questions:

> What standard should the Authority apply in determining an agency's statutory obligation to bargain when an agency institutes changes in conditions of employment that are substantively negotiable?  Why?  Should the Authority eliminate the distinction between substantively negotiable changes, where the *de minimis* standard has not been applied, and changes that are not substantively negotiable, where the *de minimis* standard has been applied?  Why?

Briefs were filed by three unions representing employees of the Government and by the Departments of Defense and of Labor.

In the resulting order, now under review, the Authority reversed the ALJ and repudiated its prior practice, noting that it had never "explained *why* the extent of the impact of the change is not relevant in determining whether the agency has an obligation to bargain." *Soc. Sec. Admin., Office of Hearings & Appeals, Charleston, S.C.*, 59 F.L.R.A. No. 118, 2004 WL 349896, Slip at 19 (Feb. 19, 2004) (hereinafter *Charleston OHA*).  This being the "first instance in which a party ha[d] explicitly requested the Authority ... to apply the same standard to both situations," the Authority could find no reason to limit its recognition of the de minimis exception to "impact and implementation" bargaining, as to which it had long ago explained:

> [T]he Authority must take care that its adjudicative processes not be unnecessarily burdened with cases that do not serve to bring meaning and purpose to the Federal labor-management relations program.  While we seek to ensure that the rights of agencies, unions, and employees

> under the Statute are protected in situations involving changes in conditions of employment, we must also seek to discharge our responsibilities in a fashion that promotes *meaningful* bilateral negotiations. Interpreting the Statute to require bargaining over every single management action, no matter how slight the impact of that action, does not serve those aims.

*Dep't of Health and Human Services, SSA*, 24 F.L.R.A. 403, 406 (1986).

Therefore, "in the absence of any explicit indication in the Statute," *Charleston OHA*, Slip at 15, and in light of its duty to interpret the Statute "in a manner consistent with the requirement of an effective and efficient Government," 5 U.S.C. § 7101(b), the Authority concluded the Statute does not require an agency to bargain over a de minimis change in conditions of employment. In so holding, the Authority noted that a similar standard prevailed both under Executive Order 11491, which had governed labor-management relations in the federal Government prior to enactment of the Statute in 1978, *see Dep't of Defense, Air Nat'l Guard, Tex. Air Nat'l Guard, Camp Mabry, Austin, Tex.*, 6 A/SLMR 591 No. 738 (1976) (obligation to bargain "encompasses those matters which materially affect, and have a substantial impact on, personnel policies, practices, and general working conditions"), and under the National Labor Relations Act, 29 U.S.C. § 151 et seq., which governs labor-management relations in the private sector, *see Peerless Food Prods., Inc.*, 236 N.L.R.B. 161 (1978) (obligation to bargain where unilateral change "amount[s] to a material, substantial, and significant one").

Applying the de minimis standard to this case, the Authority concluded the SSA's reduction by four in the number of reserved parking spaces assigned to the six ALJs was indeed a

de mimimis change in the conditions of their employment. Accordingly, it dismissed the complaint and the Union petitioned for review.[*]

_____

[*] The Union argued before the Authority that the case was moot because (1) the Charleston OHA relocated to a "new site [that] has unreserved parking available for all employees and, unlike the [previous location], does not have any reserved parking spaces at all"; and (2) "the bargaining impasse between the parties on the issue of parking was resolved by a decision and order of the Federal Service Impasses Panel (FSIP) issued during the pendency of this case." *Charleston OHA*, Slip at 7. The Union no longer argues mootness, but the court has considered the issue nonetheless, as it is obligated to do so *sua sponte*. *See Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983); *Mine Reclamation Corp. v. FERC*, 30 F.3d 1519, 1522 (D.C. Cir. 1994).

We hold the case is not moot. Although retrospective relief -- reinstatement of the ALJs' reserved parking privileges -- may no longer be available, an order of the Authority "imposes a continuing obligation; and the [Authority] is entitled to have the resumption of the unfair labor practice barred by an enforcement decree." *NLRB v. Raytheon Co.*, 398 U.S. 25, 27 (1970). Further, as we explained in *American Federation of Government Employees v. FLRA*, 777 F.2d 751, 753 n.13 (D.C. Cir. 1985),

> In addition to issuing a cease and desist order upon a finding of an unfair labor practice, the FLRA is authorized to order "such other action as will carry out the purpose" of the Federal Labor-Management Relations Act. 5 U.S.C. § 7118(a)(7)(D); 5 C.F.R. § 2423.29. This "other action" may include the posting of a notice indicating that an agency has been found to have committed an unfair labor practice and that it has been ordered to cease committing such practices in

## II. Analysis

We review the Authority's interpretation of the Statute under the two-step framework of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). We first consider whether the "Congress has spoken directly" to the question whether an agency must bargain over changes in conditions of employment with a merely de minimis effect upon unit employees. *Id.* at 842-43 & n.9 (1984). If the court, "employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Id.* at 843 n.9.

The Statute grants "[e]ach employee ... the right ... to engage in collective bargaining with respect to conditions of employment," 5 U.S.C. § 7102(2), where "'conditions of employment' means personnel policies, practices, and matters, whether established by rule, regulation, or otherwise, affecting working conditions." 5 U.S.C. § 7103(a)(14). Section 7106 enumerates several "management rights" that function as exceptions to the duty to bargain. Here the parties agree that reserved parking was a "condition of employment" for the ALJs and that the SSA's reduction in the number of spaces assigned to them was not a matter of "management right."

At *Chevron* step one the parties each advance a "traditional tool of statutory construction." The Union argues that, because the Statute enumerates several exceptions to the duty to bargain but nowhere mentions a de minimis exception, the court should

the future .... The existence of this additional remedy ... establishes that a live controversy still exists between the parties and that this case is therefore not moot.

infer that the Congress did not intend that there be a de minimis exception; *expressio unius est exclusio alterius*. The Authority, for its part, argues that a de minimis exception, not having been expressly foreclosed, is implicit in the Statute as in all rules of law; *de minimis non curat lex*.

The Union's argument that the enumeration of management rights in the Statute precludes a de minimis exception to the duty to bargain fails on two counts. First, although it is true, as the Union says, the Authority has no inherent power to "confer[] on federal agencies a new management right that Congress ... did not contemplate," *Am. Fed'n of Gov't Employees v. FLRA*, 853 F.2d 986, 992 (1988), that is not what it has done. A de minimis change is not a proper subject of bargaining not because management has a "right" to make it but because it has no appreciable effect upon working conditions. Second, we have repeatedly recognized that a de minimis exception is generally not express; rather, it is "inherent in most statutory schemes," by implication. As we explained in *Environmental Defense Fund, Inc. v. EPA*:

> Categorical exemptions may ... be permissible "as an exercise of agency power, inherent in most statutory schemes, to overlook circumstances that in context may fairly be considered de minimis" .... The ability to create a *de minimis* exemption "is not an ability to depart from the statute, but rather a tool to be used in implementing the legislative design."
>
> ....
>
> As long as the Congress has not been "extraordinarily rigid" in drafting the statute ... "there is likely a basis for an implication of de minimis authority to provide [an] exemption when the burdens of regulation yield a gain of

trivial or no value."

82 F.3d 451, 466 (D.C. Cir. 1996), *quoting Alabama Power Co. v. Costle,* 636 F.2d 323, 360 (D.C. Cir. 1979).  Unless it has been "extraordinarily rigid" in expressing itself to the contrary, that is, the Congress is always presumed to intend that "pointless expenditures of effort" be avoided.  *Id.*  Therefore, the Union's argument, based as it is upon the venerable and useful implication captured by the *expressio unius* maxim, does not justify the conclusion that the Congress has spoken directly to the question here at issue.

We proceed accordingly to consider under *Chevron* step two, 467 U.S. at 843, whether the Authority's inference that there is a de minimis exception to the duty to bargain is a permissible construction of the Statute.  The Union argues the de minimis exception is contrary to the Congress's having found:

> [E]xperience in both private and public employment indicates that the statutory protection of the right of employees to ... bargain collectively ... safeguards the public interest ... contributes to the effective conduct of public business, and ... facilitates and encourages the amicable settlement of disputes.

5 U.S.C. § 7101(a)(1).  In light of this finding, the Union argues, "the erection of barriers to collective bargaining thwarts legislative intent."

Neither the finding in § 7101(a)(1), nor any other provision of the Statute, however, gives any indication "the Congress has taken a position so [extraordinarily] rigid that it will not admit of a de minimis exemption." *Envtl. Def. Fund, Inc.*, 82 F.3d at 466.  On the contrary, the Congress took the unusual step of prescribing a practical and flexible rule of construction -- to wit,

the Statute "should be interpreted in a manner consistent with the requirement of an effective and efficient Government," 5 U.S.C. § 7101(b) -- that clearly invites the Authority to exercise its judgment, as it has done in the order under review. Effectiveness and efficiency in government can hardly be thought to require bargaining over truly insignificant conditions of employment. As the Authority reasonably concluded, "No interests are served by requiring bargaining over every single management action, no matter how slight the impact." *Charleston OHA*, Slip at 21.

The Union's attempt to distinguish "impact bargaining" under § 7106(b)(3) from bargaining over substantively negotiable conditions of employment is unpersuasive. According to the Union, "the concept of adverse impact ... is grounded squarely in the statutory language ... but has no rational bearing on substantive bargaining cases." The Union reasons as follows:

> The existence of some level of impact on bargaining unit employees is ... a sine qua non of a union's right to engage in impact bargaining. In contrast, in cases involving substantively negotiable matters, the Statute confers a right to engage in collective bargaining without reference to the existence of impact.

Section § 7106(b)(3), however, does not contain the word "impact"; it requires bargaining over "appropriate arrangements for employees adversely *affected* by the exercise" of any management right. More important, § 7102(2), which governs so-called substantive bargaining, invokes a cognate by referencing "conditions of employment," defined in 5 U.S.C. § 7103(a)(14) as "personnel polices, practices, and matters ... *affecting* working conditions." The Congress thus having predicated the duty to bargain under § 7106(b)(3) and under §

7102(2) upon the same notion, namely an *effect* upon employees, we cannot deem unreasonable, as the Union suggests, the Authority's conclusion that "application of the same standard is warranted in both circumstances." *Charleston OHA*, Slip at 21. Indeed, the Union's argument that "some level of impact" -- that is, "effect" -- "is a sine qua non of a union's right to engage in ... bargaining" provides a persuasive defense of the Authority's uniform de minimis exception, although the Authority does not make that point.

The Union's invocation of the legislative history of the Statute is no more persuasive than its argument from the text. The legislative history quoted by the Union indicates the Congress intended "that the listed management rights ... be narrowly construed exceptions to the general obligation to bargain ... and that section 7106 be read to favor collective bargaining whenever there is a doubt as to the negotiability of a subject or proposal." 124 Cong. Rec. 29,198 (1978) (statement of Rep. Ford). As the Authority points out, this case does not involve the interpretation of the scope of § 7106; the parties agree that the SSA was not exercising a management right when it reduced the number of parking spaces reserved for ALJs.

Finally, we think the Union's predictions about the practical consequences of the Authority's decision are unduly dire. First, the Union warns the de minimis exception will "upset[] the balance at the bargaining table" and will "seriously damage[] the union's collective bargaining efforts." This concern is misplaced in view of the narrow limits of the de minimis doctrine, for the Authority will bear the burden before this court of showing that any particular application of the de minimis exception is reasonable. *See Alabama Power*, 636 F.2d at 360 ("Determination of when matters are truly de minimis naturally will turn on the assessment of particular circumstances, and the agency will bear the burden of making the required showing").

Second, the Union predicts the Authority's decision will "spawn significant confusion and extensive litigation." Although there is little indication the de minimis exception for "impact bargaining" has had such an untoward effect, we trust that if administration of the de minimis exception for substantive bargaining becomes more burdensome than would be the alternative of bargaining over trivia, then the Authority will conclude the interests of "effective and efficient Government" are better served by dispensing with the exception. It is, of course, for the Authority, rather than for this court, to make that judgment.

\* \* \*

We turn now to whether the management action at issue in this case, "in context may fairly be considered de minimis." *Alabama Power*, 636 F.2d at 360. The record establishes, and the Union does not dispute, that when the SSA reassigned four of the six parking spaces previously reserved for ALJs, parking for the ALJs was still free, in the same garage, and always available. Indeed, the Union, standing upon the principle that it and the employees it represents should be allowed to decide what is worth bargaining over, does not claim the change had any material effect upon the ALJs. Accordingly, we agree with the Authority that the difference was de minimis.

### III. Conclusion

For the foregoing reasons, the petition for review is

*Denied*.