144 F.3d 90
 158 L.R.R.M. (BNA) 2483, 330 U.S.App.D.C. 141
 DEPARTMENT OF JUSTICE, Immigration and Naturalization
Service, Northern Region, Twin Cities, Minnesota, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent.
National Border Patrol Council, American Federation of
Government Employees, AFL-CIO, Intervenor.
 No. 97-1388.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued March 12, 1998.
Decided May 29, 1998.
 
 On Petition for Review and Cross-Application for Enforcement of an Order of the Federal Labor Relations Authority.
 Howard S. Scher, Attorney, U.S. Department of Justice, argued the cause for petitioner. With him on the briefs were Frank W. Hunger, Assistant Attorney General, and William Kanter, Attorney.
 David M. Smith, Solicitor, Federal Labor Relations Authority, argued the cause for respondent. With him on the brief was Shari Polur, Attorney.
 Mark D. Roth and Stuart A. Kirsch were on the brief for intervenor National Border Patrol Council. Charles A. Hobbie entered an appearance.
 Before: RANDOLPH, ROGERS and TATEL, Circuit Judges.
 TATEL, Circuit Judge:
 
 
 1
 On remand from this court's decision in U.S. Department of Justice v. FLRA, 39 F.3d 361 (D.C.Cir.1994), the Federal Labor Relations Authority found that a government employer committed an unfair labor practice by refusing to provide documents requested by a union representing an employee in a disciplinary action. Because the Authority properly concluded both that the union sought the documents in its capacity as exclusive representative and that the union needed the documents to assist the employee, we deny the employer's petition for review.
 
 
 2
 * In AFGE, Local 2343 v. FLRA, 144 F.3d 85, 86-87 (D.C.Cir.1998), also issued today, we describe the framework of the Federal Service Labor-Management Relations Statute, Pub.L. No. 95-454, § 701, 92 Stat. 1191-1216 (1978) (codified as amended at 5 U.S.C. §§ 7101-7135 (1994 & Supp. II 1996)), including the right of exclusive representatives to request from agencies information that is "necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining," 5 U.S.C. § 7114(b)(4)(B). Unlike Local 2343, where a union invoked section 7114(b)(4) in connection with a pending grievance, this case arises at the "oral reply" stage of the process for disciplining employees, an event occurring prior to the point at which a grievance can be filed. At the oral reply, employees are entitled to "answer [the charges against them] orally and in writing" and to "be represented by an attorney or other representative." Id. § 7513(b)(2)-(3).
 
 
 3
 Following an investigation into allegations of theft, falsification, and conduct unbecoming an officer, the Immigration and Naturalization Service notified employee Jason Wood of its intent to remove him from his position as a Border Patrol agent. Wood asked the National Border Patrol Council of the American Federation of Government Employees, AFL-CIO, to help him prepare his response to the notice. Invoking its rights as exclusive representative under section 7114(b)(4), the Union asked the INS for the entire investigative file, all proposal and decision notices for disciplinary and/or adverse action cases similar to Wood's within INS's Northern Region in the past five years, and several other related documents. The Union said it needed the disciplinary records to "properly respond to the allegations" against Wood. Responding that the Union was entitled only to information relied upon in preparing the proposed disciplinary action and that the Union's reference to section 7114(b)(4) was "not appropriate," the INS gave the Union a copy of the investigatory report, but nothing more. When the Union reiterated its request for the disciplinary records, saying that it needed them to determine whether Wood's proposed discipline was consistent with the discipline meted out to other employees for similar offenses, the INS again declined, stating that disclosure would violate the privacy rights of employees whose records were sought. The Union offered to take the records in sanitized form, but the INS still refused to release them. After Wood's oral reply, the INS reduced the proposed removal to a five-day suspension. The Union then filed a grievance and invoked arbitration.
 
 
 4
 Initiating the proceedings now before us, the Union filed unfair labor practice charges against the INS. Following a hearing, the administrative law judge concluded that the disciplinary records satisfied the requirements of section 7114(b)(4)--i.e., they were "normally maintained," "reasonably available," "necessary," and not otherwise barred from disclosure. The Federal Labor Relations Authority agreed, finding that the Union had a "clear, articulated need" for the requested disciplinary records--i.e., to assist Wood in responding to the proposed removal action. U.S. Dep't of Justice, Wash., D.C., and U.S. INS, N. Region, Twin Cities, Minn., and Office of Inspector Gen., Wash., D.C., and Office of Prof'l Responsibility, Wash., D.C. ("Twin Cities I"), 46 F.L.R.A. 1526, 1536 (1993). Because the INS refused to provide the requested information, the Authority ruled that the agency committed an unfair labor practice by failing to comply with section 7114(b)(4). Id. at 1536-38.
 
 
 5
 Reversing and remanding, this court concluded that the Authority failed to frame its analysis in terms of the "particularized need" test of NLRB v. FLRA, 952 F.2d 523 (D.C.Cir.1992), directed the agency to "analyze anew the union's document request under the principles" of that case. DOJ, 39 F.3d at 369-70. On remand, the Authority noted that it had since directly addressed NLRB v. FLRA in IRS, Washington, D.C., and IRS, Kansas City Service Center, Kansas City, Missouri, 50 F.L.R.A. 661 (1995), where it held that " 'a union requesting information under [section 7114(b)(4) ] must establish particularized need for the information by articulating, with specificity, why it needs the requested information, including the uses to which the union will put the information, and the connection between those uses and the union's representational responsibilities under the Statute.' " U.S. Dep't of Justice, INS, N. Region, Twin Cities, Minn. ("Twin Cities II"), 51 F.L.R.A. 1467, 1472 (1996) (quoting INS, Kansas City, 50 F.L.R.A. at 669). Applying that standard, the Authority found that the Union had met its burden of establishing particularized need for the disciplinary records. The union, the Authority pointed out, had "explicitly connected its request with the adverse action the [INS] proposed to take against Wood by stating that the requested information was needed to 'properly respond to the allegations' set forth in the notice," and asserted "that it needed the records in order to compare the discipline the [INS] had proposed for Wood with that given to other employees who had committed similar offenses." Id. at 1473-74. The Authority also found that the INS failed to demonstrate any countervailing anti-disclosure interests and questioned whether any such interests even existed, since the Union agreed to take the disciplinary records in sanitized form. Id. at 1479 n. 11. Although conceding that the Union was not required to represent Wood, the Authority rejected the INS's argument that the Union had not requested the information in its capacity as "exclusive representative," as well as its argument that even if it had requested the documents in that capacity, the disciplinary records were not relevant to preparing for an oral reply because they concerned defenses that should be raised later in a grievance. Id. at 1478. For all of these reasons, the Authority again ruled that the INS committed an unfair labor practice. Id. at 1479.
 
 
 6
 Having filed an unsuccessful petition for reconsideration, U.S. Dep't of Justice, INS, N. Region, Twin Cities, Minn. ("Twin Cities III"), 52 F.L.R.A. 1323, 1338 (1997), the INS now petitions for review of the Authority's decision. We review Authority orders in accordance with section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706 (1994); see id. § 7123(c), upholding its determinations unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id. § 706(2)(A); see also Local 2343, slip op. at 6.
 
 II
 
 7
 In support of its argument that it had no duty to provide the disciplinary records, the INS claims that a union does not act in its capacity as "exclusive representative" when it represents an employee facing proposed disciplinary action because, at that stage of the disciplinary process, the employee can choose not to be represented by the union. The INS also points out that since a mere proposal to discipline an employee is not grievable, a union can decline an employee's request for representation at the oral reply stage. According to the INS, therefore, as Wood's representative of choice at the oral reply stage, the Union had not requested the records in its capacity as "exclusive representative."
 
 
 8
 Although neither party addresses the appropriate standard of review, the issue in this case--whether the Union acted as "exclusive representative" under the Federal Service Labor-Management Statute--presents a straightforward question of statutory interpretation subject to the familiar two-step test of Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). See Fort Stewart Schs. v. FLRA, 495 U.S. 641, 644-45, 110 S.Ct. 2043, 2045-46, 109 L.Ed.2d 659 (1990) (applying Chevron analysis to the Authority's interpretation of the FSLMRS). If Congress has spoken directly to the "precise question at issue," we must give effect to its "unambiguously expressed intent." Chevron, 467 U.S. at 842-43, 104 S.Ct. at 2781-82. If, however, the statute is silent or ambiguous with respect to the specific issue, we defer to the Authority's interpretation, so long as that interpretation is reasonable. Id. at 843-44, 104 S.Ct. at 2781-83.
 
 
 9
 We begin with the language of the statute. Section 7103(a)(16) defines "exclusive representative" as any labor organization which:
 
 
 10
 (A) is certified as the exclusive representative of employees in an appropriate unit pursuant to section 7111 of this title; or
 
 
 11
 (B) was recognized by an agency immediately before the effective date of this chapter as the exclusive representative of employees in an appropriate unit--
 
 
 12
 (i) on the basis of an election, or
 
 
 13
 (ii) on any basis other than an election,
 
 
 14
 and continues to be so recognized in accordance with the provisions of this chapter[.]
 
 
 15
 5 U.S.C. § 7103(a)(16). Nothing in this definition, section 7114(b)(4), or any other part of the statute strips a union of exclusive representative status, once so designated, when it chooses to represent an employee at the oral reply stage. In fact, representing an employee at an oral reply falls comfortably within an exclusive representative's broad section 7114(a)(1) power to "act for ... all employees in the unit," id. § 7114(a)(1). Applying Chevron's first step, then, we think the statute entitled the Union in this case to take advantage of section 7114(b)(4)'s informational rights when it represented Wood at his oral reply.
 
 
 16
 Even if the statute's language were ambiguous, we would find the Authority's holding in this case to be a perfectly reasonable interpretation of the statute. See Chevron, 467 U.S. at 843-44, 104 S.Ct. at 2781-83. Once an employee asks a union for representation at the oral reply stage and the union agrees, we cannot imagine what would be gained by then denying the union the information it needs to perform its statutory duty. To be sure, exclusive representatives may decline employees' requests for representation at the oral reply stage. See AFGE, Local 1857, AFL-CIO, 46 F.L.R.A. 904, 911-13 (1992). Employees may even retain non-union counsel and exclude the exclusive representative from oral reply proceedings. See U.S. Dep't of Justice, Bureau of Prisons, Fed. Correctional Inst. (Ray Brook, NY), 29 F.L.R.A. 584, 592-93 (1987). But as the Authority points out, these possibilities have nothing at all to do with the authority unions possess when they do in fact represent employees at oral replies. See Twin Cities II, 51 F.L.R.A. at 1478. Indeed, even if the Union had not represented Wood at the oral reply, it could have obtained the disciplinary records by articulating a particularized need for the information in terms of fulfilling its representational duties and overseeing the administration of the collective bargaining agreement. See AFGE, AFL-CIO, Local 1345 v. FLRA, 793 F.2d 1360, 1364-65 (D.C.Cir.1986).
 
 
 17
 According to the INS, the Authority's interpretation prejudices employees who choose non-union representation. That may well be true, but we think the imbalance between union and non-union representation is not necessarily suspect. Employees might choose union representation over outside counsel at oral replies precisely because unions can obtain information undersection 7114(b)(4). This result makes sense in view of the unique and central role unions play in ensuring an efficient and peaceful federal workforce. See 5 U.S.C. § 7101(a)(1) (recognizing that the right of workers to select "labor organizations of their own choosing ... contributes to the effective conduct of public business, and ... facilitates and encourages the amicable settlements of disputes"). Moreover, as exclusive representatives charged with acting for unit members and negotiating collective bargaining agreements, see id. § 7114(a)(1), unions seek to vindicate not just employees' individual interests at the oral reply, as the INS contends, but also the bargaining unit's broader interest in the proper administration of the collective bargaining agreement. By obtaining related disciplinary records at the oral reply stage, for example, the union might convince the agency to reduce the proposed punishment, thus possibly avoiding a grievance and promoting the bargaining unit's interest in expeditious resolution of labor disputes.
 
 
 18
 Neither Department of the Air Force, Scott Air Force Base, Illinois v. Federal Labor Relations Authority, 104 F.3d 1396 (D.C.Cir.1997), nor Department of Defense Office of Dependent Schools, 36 F.L.R.A. 871 (1990), requires a different result. In Scott, we considered whether a disciplinary letter that a union requested from the Air Force base involved a grievable subject within the scope of the collective bargaining agreement, not whether the union could actually bring a grievance at that point in the proceedings. Here, the INS makes no claim that the Union's need for the disciplinary records--to make a disparate treatment argument--fell outside the scope of the collective bargaining agreement. Office of Dependent Schools is equally irrelevant. There, the Authority concluded that the employer's refusal to disclose the addresses of tentatively hired teachers did not violate section 7114(b)(4), stating: "Based on the remoteness and uncertainty of the recruits' prospective employment in the bargaining unit, we find that the record does not support a finding that the Union needed the recruits' home addresses in order to carry out its representational responsibilities." Id. at 874. This "remoteness" rationale has no applicability here. There is no question that Wood was a member of the bargaining unit, that the agency notified him of his proposed removal, that the information requested related to the terms of his employment, and that the Union agreed to serve as his representative. The Union's need for the documents was therefore imminent and definite, not "remote [ ] and uncertain [ ]."
 
 III
 
 19
 Having determined that the Union may invoke its informational rights under section 7114(b)(4), we turn to the second issue in this case: Were the disciplinary records the Union requested "necessary" at the oral reply stage? In NLRB v. FLRA, we distinguished section 7114(b)(4)'s "necessary" standard from the concept of "relevance," holding that the section entitles unions to "something less than what full 'discovery' might require." 952 F.2d at 531.
 
 
 20
 The INS argues that the Authority failed to apply NLRB v. FLRA's "necessity" standard, claiming that it merely found that the documents were relevant at the oral reply stage. We read the Authority's decision differently. Clearly focusing on "necessity" rather than relevance, the Authority found that after originally requesting the documents "to 'properly respond to the allegations' set forth in the notice," Twin Cities II, 51 F.L.R.A. at 1473 (quoting Twin Cities I, 46 F.L.R.A. at 1556), the Union later said it needed the documents "in order to compare the discipline the [INS] had proposed for Wood with that given to other employees who had committed similar offenses," id. at 1473-74. Further focusing on "necessity," the Authority credited the Union's statement that it requested records spanning five years and covering an entire geographic region because the number of disciplinary actions was small. Id. at 1474. To be sure, the Authority said that "information establishing ... disparate treatment [is] relevant in an oral reply." Id. at 1478. But this statement came in response to the INS's assertion that the disciplinary records were irrelevant at the oral reply stage and only after the Authority had already concluded that "the Union satisfied its burden to articulate and establish a particularized need for the requested disciplinary and adverse action letters." Id. at 1476.
 
 
 21
 Claiming that information regarding disparate treatment is unnecessary until the grievance stage, the INS argues that the only information the Union needed to prepare for Wood's oral reply was the investigatory report upon which the INS had based its proposed discipline and which it had already given the Union. The Authority labeled this effort to distinguish between preparing for an oral reply and preparing for grievance proceedings a "false line." Id. at 1478. We agree. The oral reply is not limited to whether the employee committed the alleged offense. As this case demonstrates--after Wood's presentation, the agency reduced the proposed termination to a five-day suspension--the oral reply also encompasses the appropriate punishment. In fact, for employees who admit they committed the alleged offense but believe the proposed punishment does not fit the crime, evidence of disparate treatment constitutes their only available defense. Information about how an agency disciplines other employees is thus "necessary" at the oral reply stage.
 
 
 22
 The INS points to an Authority regulation stating that "[t]he notice of [proposed action] shall inform the employee of his or her right to review the material which is relied on to support the reasons for action given in the notice." 5 C.F.R. § 752.404(b)(1) (1997). Nothing in that regulation, however, supports the INS's argument that employees have no need for disparate treatment information at the oral reply stage. The regulation says no more than that employees have a right to review information forming the basis of proposed charges and discipline, information that the parties agree is "necessary" for oral reply purposes. As counsel for the Authority explained at oral argument, the regulation places a floor under, not a ceiling on, the types of information that might be necessary to respond to proposed disciplinary action.
 
 
 23
 Finally, by arguing that the Authority found that the Union satisfied the particularized need test not because it needed the disciplinary records at the oral reply stage, but because it might need the records once the agency disciplined Wood, the INS misconstrues the Authority's decision. In saying that "[t]he matter for which representation was sought was directly related to Wood's conditions of employment and, ultimately, ripened into a matter that is grievable and arbitrable," Twin Cities II, 51 F.L.R.A. at 1478, the Authority was merely explaining the Union's "exclusive representative" capacity, not determining that the documents were unnecessary until the grievance stage.
 
 IV
 
 24
 The Union asks us to sanction the INS for pursuing this appeal because in its petition for reconsideration before the Authority, the agency revealed that it no longer had the requested documents. Even though the Authority presumed the INS had destroyed some of the documents, Twin Cities III, 52 F.L.R.A. at 1337, we decline the Union's request. For one thing, whether the agency committed an unfair labor practice by refusing the Union's request for the disciplinary records--the only issue before us--is unaffected by whether the agency might have later destroyed them. See AFGE, Local 1941, AFL-CIO v. FLRA, 837 F.2d 495, 497 n. 2 (D.C.Cir.1988) (unfair labor practice not mooted by employee's death); see also Department of Justice v. FLRA, 991 F.2d 285, 289 (5th Cir.1993) ("[Unfair labor practice] cases ... generally do not become moot when the individual parties resolve the specific matter that gave rise to the dispute because the 'Board is entitled to have the resumption of the unfair practice barred by an enforcement decree.' " (quoting NLRB v. Raytheon Co., 398 U.S. 25, 27, 90 S.Ct. 1547, 1549, 26 L.Ed.2d 21 (1970))). Moreover, recognizing its power to punish the INS for destroying documents, the Authority left the issue for the compliance stage, saying "the assertion concerning destruction of the documents is unsubstantiated and unclear." Twin Cities III, 52 F.L.R.A. at 1337. Under these circumstances, we think consideration of sanctions is premature.
 
 
 25
 The INS's petition for review is denied.
 
 
 26
 So ordered.