# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued February 18, 2016         Decided June 17, 2016

No. 14-1185

LAURA SANDS,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL
UNION, LOCAL 700,
INTERVENOR

———

On Petition for Review of an Order
of the National Labor Relations Board

———

*Aaron B. Solem* argued the cause for petitioner. With him on the briefs was *Glenn M. Taubman*.

*Robert J. Englehart*, Supervisory Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were *Richard F. Griffin*, General Counsel, *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Doug Callahan*, Attorney.

*James B. Coppess* argued the cause for intervenor. With him on the brief was *Laurence Gold*.

Before: TATEL, GRIFFITH, and KAVANAUGH, *Circuit Judges*.

GRIFFITH, *Circuit Judge*: In this matter, the National Labor Relations Board held that a union does not commit an unfair labor practice by failing to tell a prospective member how much money she will save in reduced dues should she choose not to join. But we cannot reach the merits of that decision. Actions undertaken by the union since the filing of this petition for review have rendered the matter moot. For that reason, we dismiss the petition for review as moot and vacate the Board's order under our equitable authority.

I

In 2004, petitioner Laura Sands began working at a Kroger grocery store in Crawfordsville, Indiana, whose employees had been organized by the United Food and Commercial Workers International Union, Local 700. The collective-bargaining agreement between Kroger and the union included a "union-security clause," which provided that all grocery department employees—even those who did not join the union—had to pay dues to the union to cover the costs of representational activities.

When Sands began her job at the store, the union sent her a letter and membership application explaining to her what rights and obligations she had under the union-security clause. The application explained that, whether she joined the union or not, she was required to pay dues to the union to compensate it for acting as her collective-bargaining agent. The application was also careful to explain that she need not

join the union, and that if she did not, she could refuse to pay for the union's activities that were unrelated to collective bargaining. Important for this case, however, neither the letter nor the application told her how much money she would save if she did not join the union, which for Sands was about $3.50 per month.

Sands decided to join the union and paid all her dues until she quit work at the store in 2005. At that time, she sent the union a letter claiming that she "never wanted to join [the union] in the first place," and that the union had "deliberately misled" her about her obligations under the union-security clause.[1] Shortly thereafter, Sands filed an unfair labor practice charge with the Board, and the General Counsel issued a complaint against the union. According to the complaint, the union violated section 8 of the National Labor Relations Act (NLRA) by failing to tell Sands when she began work at Kroger how much less in dues she would have to pay if she did not join the union. *See* 29 U.S.C. § 158(b)(1)(A). Before the administrative law judge (ALJ), the union argued that Sands was not entitled to that information until *after* she chose not to join the union. The General Counsel and Sands argued that she was entitled to the information at the same time that she was told about the union-security clause. The ALJ recommended dismissing the complaint based on prior Board decisions supporting the union's position.

---

[1] Letter from Laura Sands to the Secretary-Treasurer, United Food and Commercial Workers International Union, Local 700 (June 25, 2005). Although Sands's letter to the union and her charge filed with the Board claimed that she received inadequate notice regarding both her right not to join the union generally as well as the amount she would save in monthly dues were she not to join, the General Counsel's complaint focused exclusively on the union's failure to adequately explain the financial implications of not joining.

Both the General Counsel and Sands filed exceptions with the Board, arguing that the Board decisions on which the ALJ relied conflicted with D.C. Circuit case law. In particular, they cited our decision in *Penrod v. NLRB*, 203 F.3d 41 (D.C. Cir. 2000), where we held that new employees must be given "sufficient information" to decide whether to join the union, including "the percentage of union dues that would be chargeable" should they not join. *Id.* at 47 (applying *Abrams v. Commc'ns Workers of Am.*, 59 F.3d 1373 (D.C. Cir. 1995)). The Board agreed that *Penrod* and *Abrams*, the case on which *Penrod* relied, would answer the question at hand against the union, but quite remarkably dismissed the complaint anyway. The Board asserted that it was not bound to follow *Penrod* and *Abrams* because our decisions there had failed to account for a policy that underlay the Board's position. *UFCW, Local 700 (Kroger)*, 361 N.L.R.B. No. 39 (2014). Before us, the Board recognizes again, as it did below, that our prior decisions would compel us to vacate the Board's order on the merits. The Board hopes that we will revisit those decisions en banc.

Sands petitions for review of the Board's order and asserts jurisdiction under 29 U.S.C. § 160(f). But this case is moot, and we do not have jurisdiction to reach the merits of the petition.

II

All the time that Sands worked at Kroger, she paid full dues as a union member. It was her claim to a refund of at least a portion of those dues that gave her a personal interest in this case. But that interest has disappeared. In 2014, about two months after Sands petitioned this court for review of the Board's decision rejecting her claims, the union refunded the dues she had paid by sending her a check for $350, claiming that those funds equaled the total dues Sands had paid plus

interest.[2] With a refund of her dues in hand, Sands can no longer claim her payment of dues as the basis for her interest in this matter.

Sands expressly waived any argument to the contrary. *See Defs. of Wildlife v. Jewell*, 815 F.3d 1, 8 (D.C. Cir. 2016) (refusing to reach arguments that were "affirmatively waived"). In fact, she conceded in her reply brief that "she now lacks [a refund] remedy" because the union "has refunded her all of her dues." Reply Br. 21. We will not therefore consider whether—as counsel first suggested in a supplemental filing just two days before oral argument—her failure to cash the refund check has any legal significance.

We have jurisdiction only over live cases or controversies. U.S. CONST. art. III, § 2, cl. 1. We cannot "retain jurisdiction over cases in which one or both of the parties plainly lack a continuing interest, as when the parties have settled." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 192 (2000). In the labor law context, this means that if the parties have already "completely resolved the dispute" between them "and cured any unfair labor practice" that may have occurred, it is "the court's duty to dismiss th[e] case as moot." *Am. Fed'n of Gov't Emps., AFL-CIO, Local 3090 v. FLRA*, 777 F.2d 751, 753 n.13 (D.C. Cir. 1985); *see also Calderon v. Moore*, 518 U.S. 149, 150 (1996) (per curiam) ("[A]n appeal should . . . be dismissed as moot when, by virtue of an intervening event, a court of appeals cannot grant 'any effectual relief whatever' in favor of the appellant." (citation omitted)). The Board

---

[2] Although Sands would have avoided paying only about $3.50 per month in partial union expenses had she never joined the union, the union refunded Sands the significantly larger amount of $350. The union explained that it did so "in an unsuccessful attempt to avoid wasting resources in litigation." Union Br. 5 n.1.

carries the burden to show mootness, *Friends of the Earth*, 528 U.S. at 189, and it has done so here.

In her briefs, Sands argues against mootness by invoking theories of relief unrelated to her claim for a refund of a portion of the dues she has paid, but none of them establishes her personal interest in what remains of this dispute. First, Sands asks that the union be ordered to post a notice at the grocery store where she worked announcing to the public that the union violated the NLRA. As Sands points out, the possibility of such a remedial notice usually keeps an unfair labor practice case from becoming moot, even if the parties resolve the underlying dispute. *See Am. Fed'n of Gov't Emps.*, 777 F.2d at 753 n.13.

But the cases on which Sands relies, in which the interest of a particular affected employee had disappeared, assume an ongoing relationship between the petitioner and the company or union that committed a labor violation. Only then can the posting of a remedial notice address the *petitioner*'s injury. For example, where the Board petitions to enforce its order requiring a remedial notice to be posted, the Board has an independent interest at stake even if the employee involved in the suit quits the company or dies. *See, e.g.*, *Dep't of Justice v. FLRA*, 144 F.3d 90, 95 (D.C. Cir. 1998); *Dep't of Justice v. FLRA*, 991 F.2d 285, 289 (5th Cir. 1993); *NLRB v. Methodist Hosp. of Gary, Inc.*, 733 F.2d 43, 48 (7th Cir. 1984). The Board's orders impose continuing obligations that do not cease when the particular offending conduct ends. *See NLRB v. Raytheon Co.*, 398 U.S. 25, 27 (1970); *see also Dep't of Justice*, 144 F.3d at 95 (recognizing that resolution of the underlying dispute generally does not moot the case "because the Board is entitled to have the resumption of the unfair practice barred by an enforcement decree" (quoting *Dep't of Justice*, 991 F.2d at 289) (internal quotation marks omitted)). Similarly, where a union challenges a Board order in favor of

a company, the union has an interest in the court overturning the Board's decision so that the company will be ordered to post a remedial notice at the workplace where the union operates. *See, e.g.*, *Am. Fed'n of Gov't Emps.*, 777 F.2d at 753 n.13; *Ass'n of Admin. Law Judges v. FLRA*, 397 F.3d 957, 960 n.* (D.C. Cir. 2005). In both of these situations, the petitioner, whether the Board or a union, has a concrete stake in the litigation because of its interest in the posting of a notice that a violation of the labor laws has occurred.

Our decision in *American Federation of Government Employees, Local 1941, AFL-CIO v. Federal Labor Relations Authority*, 837 F.2d 495 (D.C. Cir. 1988), is instructive. In *AFGE*, an employer denied an employee's request to have a union representative with him at a disciplinary hearing. Rather than contest that decision, the employee resigned from work. After the employee died, the union pressed the employee's claim to the Federal Labor Relations Authority, which concluded that no labor violation had occurred. The union appealed that decision to us. We held that the case was not moot, despite the employee's death. The union, we reasoned, had "a derivative right to be present, on the employee's request," at the disciplinary hearing. This derivative right gave the union a direct stake in the outcome—standing to contest the denial of representation and to seek the posting of a notice of a violation of labor law. *Id.* at 497 n.2. The controversy did not survive the employee's death because of a free-floating right that anyone would have, whenever a violation occurs, to the posting of a notice. Rather, the controversy remained alive because the union had a personal and particular ongoing interest in the posting.

Sands's situation is much different. She ended her relationship with the union when she quit her job at the grocery store in 2005, and her counsel conceded at oral argument that there is no reason to think she will work there

again. Thus, even if posting a notice about the labor violation might affect a *current* store employee, it cannot redress Sands's injury.

Sands resists this conclusion, urging us to follow the reasoning of the Sixth Circuit in *Montague v. NLRB*, 698 F.3d 307 (6th Cir. 2012). In *Montague*, a union and an employer negotiated a preliminary agreement before employees had recognized the union, but the Board found no violation of the NLRA. Two employees petitioned for review of that decision. At the time, the company operated about ninety facilities, but the facility where the alleged violation took place was no longer covered by the agreement or even owned by the company. Accordingly, the company argued that the case was moot. But the employees and the Board emphasized that should the Board lose the appeal, the company and the union would have to post notices, presumably at the company's other facilities, acknowledging their violation of law. *Id.* at 313. This requirement, they argued, kept the case from being moot. The court accepted that position without further reasoning.

To the extent the Sixth Circuit held that an employee without a personal interest in the posting of a remedial notice can pursue her case on the basis of that remedy, we disagree. Instead, our approach is more like that of the Second Circuit, which has also recognized under similar facts that an unfair labor practice case is moot when the petitioner lacks an ongoing personal interest in the proceedings. *See Gally v. NLRB*, 487 F. App'x 661 (2d Cir. 2012) (unpublished) (dismissing as moot an employee's petition for review because the employee was no longer a union member subject to a disputed requirement and the union had refunded dues); *Orce v. NLRB*, 133 F.3d 907 (2d Cir. 1997) (unpublished) (dismissing as moot an employee's petition for review because the employee had "no 'personal stake' in the

requested refund" of union dues and the employer was out of business). This approach adheres to the basic requirement that our jurisdiction depends on all parties having a "continuing interest" in the case before us. *Friends of the Earth*, 528 U.S. at 192.

Sands next argues that the case is not moot because she seeks relief on behalf of those still employed by the grocery store whose rights the union also violated. But Sands cannot avoid mootness by asserting the rights of third parties when she herself fails to meet Article III's requirements. *See Lepelletier v. FDIC*, 164 F.3d 37, 42 (D.C. Cir. 1999) ("Because [the appellant] seeks to raise the rights of third parties . . . he must show that he has standing under Article III, *and* that he satisfies third party, or *jus tertii*, standing requirements."). Sands argues that the Eighth Circuit has allowed an employee to seek judicial review on behalf of other employees, but that case does not help her because unlike Sands, that petitioner satisfied Article III standing. *See Bloom v. NLRB*, 153 F.3d 844 (8th Cir. 1998), *vacated on other grounds*, 525 U.S. 1133 (1999). In *Bloom*, a union and an employer had entered into a voluntary settlement of a case involving inadequate notice to employees about their right not to join the union. The settlement created a forward-looking remedy to notify employees about their rights, but the union had not agreed to compensate employees for past violations. When the Board dismissed an employee's complaint based on that settlement, the employee petitioned for review, even though he had since left his job. The Eighth Circuit concluded that the petitioner "himself satisfie[d] the minimum requirements for Article III standing" because he, unlike Sands, had not yet been refunded his union dues plus interest. *Id.* at 848-49.

Finally, Sands warns that if we dismiss the petition as moot, the union could resume its illegal conduct. To be sure,

ordinarily that would be our concern as well. In *Knox v. Service Employees International Union, Local 1000*, 132 S. Ct. 2277 (2012), a union similarly attempted to moot a case by offering to refund dues after certiorari was granted. The Supreme Court stressed that "[s]uch postcertiorari maneuvers designed to insulate a decision from review . . . must be viewed with a critical eye." *Id.* at 2287. The Court applies a "stringent" standard in such cases: "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189 (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)). Because the union mooted this case after Sands petitioned for review, the Board and the union face an uphill battle to show that it is "absolutely clear" that the labor violation at issue cannot "reasonably be expected" to happen again. *Id.*

The Board and the union have met this "heavy burden." *Friends of the Earth*, 528 U.S. at 189. As Sands conceded at oral argument, there is no reason to think she will ever return to work at the grocery store, and thus she cannot reasonably be expected to suffer another labor violation at the hands of this union. Add to that a recent change in Indiana law prohibiting the use of a union-security clause in a collective-bargaining agreement. *See* IND. CODE § 22-6-6-8 ("A person may not require an individual" to "pay dues, fees, assessments, or other charges of any kind or amount to a labor organization."). Because the union operates only in Indiana and it can no longer use any union-security clause there, it cannot reasonably be expected to resume sending employees inadequate information about their rights under such clauses.

## III

Although this case is moot, our inquiry does not end there. Instead, we must consider whether to vacate the Board's order rejecting Sands's position. "[T]he established practice . . . in the federal system . . . is to reverse or vacate the judgment below" when a civil case becomes moot while awaiting appellate review. *Humane Soc'y of U.S. v. Kempthorne*, 527 F.3d 181, 184 (D.C. Cir. 2008) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 71 (1997)). Vacatur in the event of mootness applies equally to unreviewed administrative orders. *A. L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 329 (1961); *see also Gally v. NLRB*, 487 F. App'x 661, 663 (2d Cir. 2012) (unpublished) (vacating a similarly mooted petition for review). Its purpose is to "clear[] the path for future relitigation of the issues" and "eliminate[] a judgment, review of which was prevented through happenstance." *U.S. Bancorp Mortg. Co. v. Bonner*, 513 U.S. 18, 22-23 (1994) (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40 (1950)).

Because vacatur is equitable in nature, we look to notions of fairness when deciding whether to use the remedy. *See id.* at 25; *Kempthorne*, 527 F.3d at 186-87. Courts usually vacate a judgment "when mootness results from unilateral action of the party who prevailed below" or from circumstances beyond the control of the parties. *Alvarez v. Smith*, 558 U.S. 87, 98 (2009) (Stevens, J., concurring in part and dissenting in part) (quoting *Bancorp*, 513 U.S. at 25). By contrast, in *Bancorp* the Court announced that when a case becomes moot because the parties reached a settlement—and the petitioner therefore "voluntarily forfeited" a remedy in court—vacatur is typically inappropriate. *See* 513 U.S. at 22-25. When deciding whether to vacate, we also take the public interest into account. *Id.* at 26. We may not, however, consider the merits of the appeal.

We have no constitutional power to decide the merits in a mooted case. *Id.* at 27.

The circumstances here counsel in favor of vacating the Board's order. First, at oral argument neither the Board nor the union resisted Sands's request for vacatur. Keeping in mind that vacatur is an equitable remedy, we consider the opposing side's silence to be significant.

Second, the roles of the parties in mooting the case counsel in favor of vacatur. The union prevailed below and mooted the case by sending Sands a refund check after she appealed, which can be reasonably seen as a "maneuver[] designed to insulate a decision from review." *Knox*, 132 S. Ct. at 2287. Although Sands participated to some degree by failing to return the check,[3] there was no "settlement" of the kind considered in *Bancorp*. The parties in *Bancorp* "stipulated to a consensual plan" that, once accepted by the bankruptcy court, "constituted a settlement that mooted the case." 513 U.S. at 20. There was no agreement of that type between Sands and the union. *See Kempthorne*, 527 F.3d at 185 ("We have interpreted *Bancorp* narrowly."). Furthermore, one rationale underlying *Bancorp* is to prevent litigants from "manipulat[ing] the judicial system by roll[ing] the dice" below and then "wash[ing] away any unfavorable outcome through use of settlement and vacatur." *Id.* at 186 (quoting *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 351-52 (D.C. Cir. 1997) (internal quotation marks omitted)). We have no such concern about any "manipulative purpose" on Sands's part that would caution against vacatur here. *Id.*

---

[3] After briefing in this case was complete, the Supreme Court decided *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), which held that an unaccepted settlement offer does not moot a case. *Id.* at 666.

Finally, we recognize that vacatur would serve the public interest by furthering the traditional purpose of the doctrine: clearing the path for future relitigation of the issues. *See Bancorp*, 513 U.S. at 22-23. The General Counsel has withdrawn at least one pending complaint raising the same issues as Sands on the basis of the Board's decision below, *SEIU/District 1199 & Serv. Emps. Int'l Union (Rescare, Inc.)*, NLRB No. 11-CB-003743 (2014), and the General Counsel's refusal to bring a complaint is unreviewable, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 155 (1975). Vacatur will prevent the General Counsel from further relying on the Board's unreviewed decision, thereby opening the door to reconsideration of the merits of the legal issues in this case. Accordingly, we exercise our equitable power to vacate the Board's order.

IV

We dismiss the petition for review as moot and vacate the Board's order.