# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 14, 2020      Decided March 2, 2021

No. 20-1049

MICHAEL K. MCNARY,
PETITIONER

v.

FEDERAL MINE SAFETY AND HEALTH REVIEW COMMISSION,
ET AL.,
RESPONDENTS

On Petition for Review of a Final Order of the
Federal Mine Safety and Health Review Commission

*Tony Oppegard* argued the cause for petitioner. With him on the briefs was *Wes Addington.*

*Christopher V. Bacon* argued the cause and filed the brief for respondent Alcoa World Alumina, LLC.

Before: ROGERS, MILLETT and WILKINS, *Circuit Judges*.

PER CURIAM: Michael McNary petitions for review of a decision by the Federal Mine Safety and Health Review Commission to affirm the dismissal of his complaint against Alcoa World Alumina, LLC ("Alcoa") alleging discrimination and interference under section 105(c) of the Federal Mine Safety and Health Act of 1977 (the "Mine Act"). Because

McNary fails to show that the court can redress his injury, he does not have standing under Article III of the Constitution to petition the court and the petition must be dismissed for lack of jurisdiction.

## I.

McNary worked as a "gland manager" and miners' representative in the digestion department of Alcoa's Bayer Alumina Plant in Point Comfort, Texas. On January 8, 2014, while performing his daily safety rounds, McNary observed "hot slurry" spewing out of a pump valve, indicating the valve was malfunctioning. Concerned about miner safety, McNary arranged for the plant's environmental health and safety manager to be notified. His supervisor, Steve Emig, had also asked for the manager's assistance. This led to a heated exchange that ended with Emig threatening McNary with removal from his department, the plant, and his position as miners' representative. Emig claimed that McNary spoke in a way that suggested he intended to challenge Emig's authority rather than discharge his duties as a miners' representative. McNary denied that he said anything to challenge Emig's authority, instead framing his conversation with Emig as one he initiated in his capacity as a miners' representative out of concern for the safety of miners in the affected area.

McNary was neither disciplined nor terminated as a result of the incident with Emig. But in June 2016, as part of a plant reorganization, McNary was laid off when Alcoa temporarily stopped production of alumina at the Point Comfort plant. McNary does not challenge that layoff decision.

Previously, on January 24, 2014, McNary had filed a complaint against Alcoa with the Mine Safety and Health Administration ("MSHA"), alleging discrimination in

violation of section 105(c)(1) of the Mine Act. After MSHA advised that it would not pursue charges, McNary filed a complaint to the same effect with the Commission on March 2, 2015. 30 U.S.C. § 815(c)(3). As remedies, McNary sought a posting at the plant of a notice of violation of the Mine Act and an order requiring management personnel to undergo training on miners' rights. After an ALJ granted Alcoa's motion for summary decision, McNary petitioned for, and the Commission granted, discretionary review. On March 28, 2017, the Commission vacated the decision and remanded for further proceedings, because the ALJ "failed to view the record and to draw inferences in a light most favorable to McNary, and because Alcoa was not entitled to summary decision as a matter of law." *McNary v. Alcoa World Alumina, LLC*, 39 FMSHRC 433, 440 (Mar. 28, 2017). On remand, after an evidentiary hearing, the ALJ dismissed McNary's case by decision dated December 21, 2017, upon crediting Emig's version of events. *McNary v. Alcoa World Alumina LLC*, 39 FMSHRC 2083, 2112, 2131 (Dec. 21, 2017). The Commission affirmed. *McNary v. Alcoa World Alumina, LLC*, 42 FMSHRC 9, 2020 WL 508743, at *1 (Jan. 22, 2020).

On February 21, 2020, McNary filed his petition for judicial review. Beforehand, on December 16, 2019, Alcoa had announced that it would permanently close the Point Comfort plant, after initially hoping that economic conditions would improve as to justify resuming production of alumina.

## II.

The court has an independent obligation to satisfy itself that it has jurisdiction, here whether McNary has Article III standing. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998); *Am. Library Ass'n v. FCC*, 401 F.3d 489, 492 (D.C. Cir. 2005). To meet the "constitutional minimum"

for standing, McNary must have suffered an injury in fact — concrete and particularized, and actual or imminent — that is fairly traceable to the challenged conduct and likely to be redressed by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "When considering standing, we assume the validity of the petitioner's merits argument." *Delaware Dep't of Nat. Res. & Envtl. Control v. EPA*, 785 F.3d 1, 7 (D.C. Cir. 2015).

Typically, "the petitioner 'bears the burden of averring facts in [his] opening brief' that establish standing." *Id.* at 8 (quoting *Texas v. EPA*, 726 F.3d 180, 198 (D.C. Cir. 2013)). The court, however, retains "discretion to . . . consider material submitted later if the petitioner 'reasonably believed [his] standing [wa]s self-evident.'" *Id.* (second alteration in original) (quoting *Am. Library*, 401 F.3d at 492). In that vein, the court may "seek supplemental submissions on standing to fulfill [its] obligation . . . to determine whether the requirements of Article III have been met." *Ams. for Safe Access v. DEA*, 706 F.3d 438, 444 (D.C. Cir. 2013).

Prior to oral argument, the court instructed the parties to be prepared to address "whether this dispute presents a live 'case or controversy' within the meaning of Article III of the U.S. Constitution, including specifically whether McNary's asserted injuries are redressable by the remedies he seeks." Per Curiam Order, Dec. 11, 2020. Both injury and causation were self-evident from the record: McNary alleged that Alcoa had interfered with protected rights when Emig, his supervisor, had threatened him with termination, which McNary challenged as discriminatory.

As to redressability, counsel for Alcoa revealed at oral argument that what was intended as a temporary suspension of production in 2016 became permanent in December 2019 when

Alcoa announced it would close the Point Comfort plant for good. *See* Oral Arg. Tr. 16:14–17:14. Counsel added that shortly before McNary filed his petition for judicial review, MSHA "deactivated" the Point Comfort plant, removing it from MSHA jurisdiction. *See id.* at 17:10–14. Subsequently, at the court's request, Alcoa filed a sworn declaration of the plant manager corroborating Alcoa's counsel's account. *See* Kevin Riggs Decl. ¶¶ 2–5, Dec. 15, 2020.

At oral argument, counsel for McNary argued that McNary's injuries are nonetheless redressable because (1) Alcoa runs other facilities where a notice of violation could be posted; (2) a cease and desist order "to stop threatening miners' reps who raise safety issues with management" and a training order could be directed at Alcoa management rather than individuals at the Point Comfort plant; and (3) "Emig could be ordered to undergo management training" assuming he is still employed by Alcoa. *See* Oral Arg. Tr. 8:13–15, 31:15–32:5. Emig no longer works for Alcoa and has not worked at the Point Comfort plant since 2016. Kevin Riggs Decl. ¶ 8. McNary's counsel also invoked the civil penalty the Secretary of Labor would have to assess against Alcoa if McNary were to prevail, *see* 30 U.S.C. §§ 815(c)(3), 820(a)(1); 29 C.F.R. § 2700.44(b). Oral Arg. Tr. 4:14–5:6.

None of these remedies "establish[] [McNary's] personal interest in what," if anything, "remains of this dispute." *Sands v. NLRB*, 825 F.3d 778, 782 (D.C. Cir. 2016). When the plant temporarily closed in 2016, the possibility existed that McNary would be recalled to his post under his union contract, *see* Oral Arg. Tr. 16:18–21, leaving open a channel for redressability. But Alcoa's decision to shutter the plant in 2019 — before McNary petitioned this court for review — extinguished that possibility and, with it, McNary's standing to seek judicial review of the Commission's decision. *See City of Orrville v.*

*FERC*, 147 F.3d 979, 984 n.5 (D.C. Cir. 1998). Although the remedies McNary's counsel identified at oral argument may benefit current Alcoa employees not before this court, they cannot redress McNary's injury, which is what Article III standing requires. *Cf. Sands*, 825 F.3d at 783. As for the Secretary's civil penalty, "citizen suitors lack standing to seek civil penalties for violations that have abated by the time of suit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 187 (2000) (citing *Steel Co.*, 523 U.S. at 106–07). As McNary's counsel made clear at oral argument, McNary seeks redress for a past, rather than ongoing, violation: "We're not saying something could happen down the road. We're saying Mr. McNary was threatened." Oral Arg. Tr. 10:10–12.

Accordingly, the court must dismiss the petition for lack of jurisdiction.