# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 10, 2023        Decided February 16, 2024

No. 22-1251

PUBLIC CITIZEN, INC.,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

NOPETRO LNG, LLC,
INTERVENOR

———

On Petition for Review of Orders
of the Federal Energy Regulatory Commission

———

*Nandan M. Joshi* argued the cause for petitioner. With him on the briefs was *Scott L. Nelson.*

*Elizabeth F. Benson* and *Ankit Jain* were on the brief for *amici curiae* Citizens for Pennsylvania's Future, et al. in support of petitioner.

*Moneen Nasmith*, *Elizabeth Livingston de Calderon*, *Jordan Luebkemann*, and *Bradley Marshall* were on the brief for *amici curiae* North Port St. Joe Project Area Committee, Inc., et al. in support of petitioner.

*Matthew J. Glover*, Senior Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. On the brief were *Matthew R. Christiansen*, General Counsel, *Robert H. Solomon*, Solicitor, and *Anand Viswanathan*, Attorney. *Robert M. Kennedy, Jr.* entered an appearance.

*Jennifer L. Key* argued the cause for intervenor and adopts the respondent's brief.

*Jeremy C. Marwell* and *Christopher J. Terhune* were on the brief for *amicus curiae* New Fortress Energy Inc. in support of respondent.

Before: KATSAS, PAN, and GARCIA, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARCIA.

GARCIA, *Circuit Judge*: In 2021, Nopetro LNG, LLC ("Nopetro") sought to build a liquefied natural gas ("LNG") facility in Port St. Joe, Florida. Nopetro requested a ruling from the Federal Energy Regulatory Commission that the planned facility falls outside the Commission's regulatory jurisdiction under Section 3 of the Natural Gas Act. The Commission granted Nopetro's request and issued a declaratory order, which it sustained on rehearing. Public Citizen, a nonprofit consumer-advocacy organization, seeks review of the Commission's determination.

Before oral argument, however, the Commission informed us—and Nopetro confirmed—that Nopetro had abandoned its plans to build the facility. We therefore dismiss Public Citizen's petition for review as moot and vacate the Commission's orders.

**I.**

Section 3 of the Natural Gas Act governs the import and export of natural gas, as well as the construction and operation of certain LNG facilities. *See* 15 U.S.C. § 717b. Section 3(e)(1) of the Act gives the Commission "exclusive authority to approve or deny an application for the siting, construction, expansion, or operation of an LNG terminal." *Id.* § 717b(e)(1).

In April 2021, Nopetro filed a petition for a declaratory order with the Commission. In relevant part, the petition requested a ruling that the company's proposed LNG facility in Port St. Joe falls outside the Commission's Section 3(e)(1) jurisdiction because, in Nopetro's view, the facility does not meet the statutory definition of an "LNG terminal." *See id.* § 717a(11). In March 2022, the Commission issued a declaratory order to that effect. After Public Citizen requested rehearing, the Commission issued a second order in July 2022 that sustained its initial determination.

Public Citizen filed a petition for review of those orders on behalf of its members who live and work in the Port St. Joe community. Those members claim that they would suffer economic, environmental, and aesthetic injuries if Nopetro were to build the facility. We granted Nopetro leave to intervene in the appeal.

On October 2, 2023, after the parties completed briefing, the Commission informed us that a senior Nopetro official stated publicly in July 2023 that the company would "no longer pursue the [Port St. Joe project] due to market conditions." Commission Oct. 2, 2023 Letter at 1 (cleaned up). We directed Nopetro to clarify its plans and to take a position on whether the case was moot. Nopetro explained that it "currently is not pursuing the Port St. Joe project and has no current plans to do so in the future." Nopetro Oct. 4, 2023 Letter. But Nopetro

stated that "its plans could change" and suggested the appeal was therefore not moot. *Id.* The Commission's order, Nopetro noted, could also "apply with respect to other Nopetro projects." *Id.* In supplemental briefing, Public Citizen similarly argued that Nopetro's changed plans do not moot the appeal. The Commission suggested that we "could" conclude that the case is moot, but it did not take a firm position on the issue. Commission Oct. 6, 2023 Letter.

At oral argument, Nopetro confirmed that it stopped pursuing the project "due to market conditions," including "the price of natural gas." Oral Arg. Tr. 52:15–53:8. The company then clarified that, even if the price increased, it would still "need to find the right off-taker" to purchase the LNG before it considered resurrecting the project. *Id.* 53:3–54:10. Nopetro also revealed that it does not own—nor does it have "an option" in place "to lease"—the land on which the facility would be built. *Id.* 54:10–19.

## II.

Derived from Article III, the mootness doctrine ensures that federal courts decide only "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988). Under this doctrine, "[e]ven where litigation poses a live controversy when filed," a federal court must "refrain from deciding [the dispute] if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc) (quoting *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir. 1990)). This rule ensures that federal courts respect the bounds of their constitutionally assigned role. Among other salutary purposes, it protects courts from rendering impermissible advisory opinions. *See Nat'l Black*

*Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997).

Although no party has urged us to do so, we hold that we lack jurisdiction over this appeal because it is moot. *See Noel Canning v. NLRB*, 705 F.3d 490, 496 (D.C. Cir. 2013) ("[F]ederal courts . . . must assure themselves of jurisdiction over any controversy they hear, regardless of the parties' failure to assert any jurisdictional question.").

**A.**

We first address the appropriate standard for evaluating mootness in this case. The ordinary standard is the one identified above: A case is moot if a "decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Transwestern Pipeline Co.*, 897 F.2d at 575. One exception to that rule exists for cases in which a party voluntarily ceases the challenged activity. When the exception applies, the case remains live unless it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). Here, given Nopetro's unilateral decision to discontinue its plans for the Port St. Joe project, Public Citizen argues that the more demanding voluntary-cessation standard governs our analysis.

We disagree. The heightened voluntary-cessation standard is grounded in concerns that a party may be manipulating "the judicial process through the false pretense of singlehandedly ending a dispute." *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 15 (D.C. Cir. 2019) (per curiam); *see Alaska v. U.S. Dep't of Agric.*, 17 F.4th 1224, 1229 (D.C. Cir. 2021) (explaining that the doctrine exists "to prevent manipulation of the judicial

process"). After all, when a party decides to cease the challenged conduct and then argues the case is moot, the party may be trying to avoid judicial review only to restart that conduct once the case has been dismissed. *See Guedes*, 920 F.3d at 15; *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("[A] defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends."). Thus, we typically apply a more "stringent" test for mootness in such circumstances, *Laidlaw*, 528 U.S. at 189, because the prospect of manipulation gives us reason to doubt the party's claims that it will not resume the challenged activity once the court dismisses the challenge.

The voluntary-cessation doctrine, however, does not apply automatically whenever the prospect of mootness is raised by a party's voluntary conduct. Instead, courts have declined to apply the doctrine when the facts do not suggest any "arguable manipulation of our jurisdiction." *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 (2001). We have, for example, expressed "serious doubts" that the doctrine should ever apply when assessing acts of Congress because it would be "inappropriate for the courts . . . to impute such manipulative conduct to a coordinate branch of government." *Clarke*, 915 F.2d at 705. And we declined to apply the doctrine when a federal agency granted a plaintiff an exemption from a challenged regulation and there was no plausible argument the agency had done so "to manipulate the judicial process." *Alaska*, 17 F.4th at 1230; *see also Monk v. Tran*, 843 F. App'x 275, 280 (Fed. Cir. 2021) (same where "[a]ppellants have made no claim . . . of reasonable fear that the [defendant agency] is manipulating the system").

Although concerns over manipulation are heightened when it is a private party that changes its conduct once

litigation commences, courts have declined to apply the doctrine in that context too. In *City News*, a business challenged state court decisions upholding the City of Waukesha's denial of a license. 531 U.S. at 282. After the Supreme Court granted review, the business informed the City that it would no longer pursue the license. *Id.* at 282–83. When the City notified the Court, the business nonetheless urged that the demanding voluntary-cessation standard applied and the case was not moot because it could change its mind and decide to apply for a license in the future. *Id.* at 283.

The Supreme Court declined to apply the heightened standard because the facts did not suggest the business was engaged in any "arguable manipulation of [the Court's] jurisdiction." *Id.* at 284. The Court highlighted two facts to support that conclusion. First, unlike in the typical voluntary-cessation scenario, the business "oppose[d] a declaration of mootness." *Id.* Second, the Court noted that because the business had lost in state court, it "c[ould] gain nothing from our dismissal." *Id.* at 284 n.1. Thus, in the unusual case where a private party's voluntary conduct "saps the controversy of vitality," *id.*, but the concerns underlying the voluntary-cessation doctrine are nevertheless not implicated, courts may decline to apply it. *See also E.I. Dupont De Nemours v. Invista B.V.*, 473 F.3d 44, 47 (2d Cir. 2006) (declining to apply the doctrine where "the cessation by the alleged wrongdoer was not a unilateral action taken for the deliberate purpose of evading a possible adverse decision by this court" (quotation marks and citation omitted)).

This is such a case. Like the business in *City News*, Nopetro is not arguing that its abandonment of the Port St. Joe project moots the appeal. To the contrary, the company opposes mootness. Nopetro Oct. 4, 2023 Letter. That the Commission—not Nopetro—brought Nopetro's change of

plans to the court's attention further mitigates any possibility that Nopetro is attempting to manipulate our jurisdiction. If Nopetro had wanted to moot the case, it would not have ceased plans to build the facility and then kept quiet, hoping that a different party would bring the changed circumstances to our attention, as the Commission did months later. Nor would it have then risked an adverse outcome by arguing that the case remained live. Finally, Nopetro, like the business in *City News*, has little to gain from our dismissal. It is no secret that our practice is to vacate administrative orders we lack the jurisdiction to review. *See, e.g.*, *Sec'y of Lab., Mine Safety & Health Admin. v. M-Class Mining, LLC*, 1 F.4th 16, 25 (D.C. Cir. 2021) (explaining that this is "the appropriate disposition of moot administrative orders" (quoting *Tennessee Gas Pipeline Co. v. Fed. Power Comm'n*, 606 F.2d 1373, 1382 (D.C. Cir. 1979))). As a sophisticated party, Nopetro surely appreciates that vacatur of the Commission's favorable orders would return the company to the same position it was in before it initiated these proceedings several years ago.

Given those undisputed, objective facts, there is no plausible argument that Nopetro is attempting to manipulate us into dismissing this case. Because we have no reason to view skeptically Nopetro's statements about the many impediments to resuming its voluntarily abandoned project, we apply the ordinary mootness test rather than the voluntary-cessation exception.

**B.**

Under the ordinary test, this case is moot. In its October 4 letter to the court, Nopetro stated that it "currently is not pursuing the Port St. Joe project and has no current plans to do so in the future." Nopetro Oct. 4, 2023 Letter. At oral argument, the company confirmed that its decision was "due to

market conditions," including "the price of natural gas." Oral Arg. Tr. 52:15–53:8. Nopetro then clarified that, even if that price increased, it would still "need to find the right off-taker" before it considered resurrecting the project. *Id.* 53:3–54:10. Moreover, the company does not own—nor does it have "an option" in place "to lease"—the land on which the facility would be built. *Id.* 54:10–19. In short, Nopetro explained that it might reconsider its decision only if (1) the price of natural gas increases; (2) it can identify customers in one of its target export countries; and (3) it can acquire the requisite land rights. Given the substantial uncertainty surrounding each of those requirements, there is no reason to believe Nopetro will build the Port St. Joe facility in the foreseeable future. Thus, a judgment on appeal vacating the Commission's orders on the merits would not "presently affect" the rights of Public Citizen's members who live in the vicinity of the now-abandoned project, nor would it "have a more-than-speculative chance of affecting them in the future." *Transwestern Pipeline Co.*, 897 F.2d at 575.

Public Citizen's arguments against mootness are unavailing. Public Citizen emphasizes that, if we hold the appeal moot and Nopetro's plans change, the organization will not have a later opportunity to challenge the orders on review because the Natural Gas Act requires any such challenge to be brought within 60 days of the Commission's order on reconsideration. *See* 15 U.S.C. § 717r(b). But that alleged concern is conditioned on Nopetro changing its plans and building the Port St. Joe facility in the first place. And as just explained, the chances of that happening are speculative.

Public Citizen also contends that dismissing the case on mootness grounds would leave intact the Commission's ongoing policy of excluding certain LNG facilities from its Section 3(e)(1) jurisdiction based on what Public Citizen

asserts is an impermissible reading of the Act. But the organization points to no authority suggesting that this general grievance suffices to preserve our jurisdiction over this particular appeal. With the Port St. Joe project no longer a real concern, Public Citizen now seeks an advisory opinion addressing the Commission's underlying interpretation of its jurisdiction so that our opinion might be applied to other currently hypothetical projects. Indeed, the circumstances suggest that Nopetro may have the same reason to oppose mootness and seek a resolution of this now-abstract dispute. We may not oblige. *See Nat'l Black Police Ass'n*, 108 F.3d at 349 ("[A] federal court has no 'power to render advisory opinions . . . .'" (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975))).

## C.

Because the appeal is moot, we will exercise our equitable authority to vacate the orders at issue. *See M-Class Mining, LLC*, 1 F.4th at 25; *S. Co. Servs., Inc. v. FERC*, 416 F.3d 39, 44 (D.C. Cir. 2005). No party argues against vacatur, and it will further the public interest by precluding any potential reliance on the challenged orders we lack authority to review. *See Sands v. NLRB*, 825 F.3d 778, 786 (D.C. Cir. 2016).

## III.

We dismiss the petition for review as moot and vacate the Commission's orders.

*So ordered.*