# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 27, 2025          Decided April 22, 2025

No. 24-1003

ALPHABET WORKERS UNION-COMMUNICATION WORKERS OF
AMERICA, LOCAL 9009,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION
AND GOOGLE LLC,
INTERVENORS

———

Consolidated with 24-1014, 24-1016, 24-1021, 24-1022

———

On Petitions for Review and Cross-Applications
for Enforcement of an Order of the
National Labor Relations Board

———

*Karla M. Campbell* argued the cause for petitioner
Alphabet Workers Union-Communication Workers of
America, Local 9009. With her on the briefs was *Michael C.
Iadevaia*.

*Matthew J. Silveira* argued the cause for petitioners Cognizant Technology Solutions U.S. Corporation and Google LLC. With him on the briefs were *John Henry Thompson*, *Cameron W. Fox*, and *Carlos Torrejon*.

*Jordan L. Von Bokern*, *Pratik A. Shah*, *James C. Crowley*, and *Stephanie Martz* were on the brief for *amici curiae* Chamber of Commerce of the United States of America, et al. in support of petitioners.

*Joel A. Heller*, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were *Jennifer A. Abruzzo*, General Counsel, *Ruth E. Burdick*, Deputy Associate General Counsel, *David Habenstreit*, Assistant General Counsel, and *Elizabeth A. Heaney*, Supervisory Attorney.

*Matthew J. Silveira*, *John Henry Thompson*, *Cameron W. Fox*, and *Carlos Torrejon* were on the brief for intervenors Cognizant Technology Solutions U.S. Corporation and Google LLC in support of respondent.

*Karla M. Campbell* and *Michael C. Iadevaia* were on the brief for intervenor Alphabet Workers Union-Communication Workers of America, Local 9009 in support of respondent.

Before: HENDERSON, MILLETT and WALKER, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: This case arises from a dispute about the National Labor Relations Board's (NLRB or Board) rule governing when one entity is

considered a joint employer of another entity's employees. Applying its rule, the Board determined that Google was a joint employer of Cognizant employees who worked on Google's YouTube Music platform and ordered both companies to bargain with the employees' union, the Alphabet Workers Union–Communication Workers of America, Local 9009 (AWU or the Union).

To challenge that decision, Google and Cognizant refused to bargain, and the NLRB concluded that the employers' refusal violated the National Labor Relations Act (NLRA or Act). The employers petitioned for review, arguing that they were not joint employers. However, the contract under which the bargaining unit employees provided services to Google expired a month later, rendering moot Google's and Cognizant's petitions and the Board's cross-applications for enforcement.

The Union also petitioned for review, contending that the NLRB's remedies did not go far enough. By not moving for reconsideration below, however, the Union fell short of the Act's jurisdictional exhaustion requirement regarding its challenge to the Board's decision to sever for further consideration a compensatory remedy that would require overruling its precedent. The Union's requests for additional prospective remedies are moot because the contract ended. The NLRB did not abuse its discretion by otherwise ordering only the customary remedies.

Accordingly, we dismiss Google's and Cognizant's petitions and the Board's cross-applications as moot and we vacate the order below. Further, we dismiss as jurisdictionally barred the part of AWU's petition seeking review of the NLRB's decision to sever the issue of a make-whole remedy for employees and dismiss as moot those parts of AWU's

petition seeking prospective remedies.  We deny the remainder of AWU's petition.

## I.

## A.

Google LLC (Google) is an internet-technology company that operates, among other services, YouTube Music. Cognizant Technology Solutions U.S. Corporation (Cognizant) is a professional-services company that provides digital and consulting services.  Google's YouTube Music Content Operations department (MCO) is responsible for YouTube Music data quality.  On July 1, 2019, Google and Cognizant entered into a contract for Cognizant to provide MCO-related services to Google through a team based in Austin, Texas.  A subset of that team is the bargaining unit at issue here.

Google and Cognizant extended the contract multiple times before it expired in February 2024.[1]  The contract's expiry brought to a close the MCO project on which the Austin-based Cognizant employees had been working.  Under Cognizant's employment policies, after a project ends employees have five weeks to apply for another project before being separated from the company.  At oral argument, counsel for Google and Cognizant stated that he believed none of the bargaining unit employees remains at Cognizant.  Under a different contract, Cognizant now provides services to Google overseas, including work formerly done by the Austin-based MCO team.

---

[1] Specifically, the contract was extended in May 2020 until February 2021, in February 2021 until February 2022, in March 2022 until February 2023, and once more before it expired in February 2024.

**B.**

While the contract was in effect, in October 2022 the Union petitioned the NLRB, seeking to represent the bargaining unit and naming Google and Cognizant as joint employers under 29 C.F.R. § 103.40(a) (2020). That rule provides that joint-employer status may be established if two entities "share or codetermine the employees' essential terms and conditions of employment," which requires exercising "substantial direct and immediate control" of one or more of those terms. *Id.* Essential terms and conditions under the rule include wages, benefits, hours, hiring, discharge, discipline, supervision and direction. *Id.* § 103.40(b).

After hearings, the Regional Director found that Google and Cognizant were joint employers in a Decision and Direction of Election (DDE) issued in March 2023. Bargaining unit employees voted unanimously to be represented by the Union in a Board-directed election in April 2023 and the Regional Director certified the Union in May 2023. Google and Cognizant then requested Board review of the DDE. In July 2023, the Board denied their requests because it agreed with the Regional Director that Google exercised substantial direct and immediate control of supervision, benefits and hours. To contest the Union's certification, Google and Cognizant refused to bargain. As a result, following a charge filed by AWU, the Board's General Counsel issued a complaint in September 2023 alleging that Google and Cognizant's refusal violated sections 8(a)(1) and 8(a)(5) of the Act.[2]

---

[2] "Although a Board's decision in a certification proceeding is not directly reviewable in the courts, an employer may challenge a certification decision indirectly by refusing to bargain with the Union and then raising its election objection in the ensuing unfair labor

Separately, the Union filed eight other unfair labor practice charges against Google and Cognizant, including allegations of retaliatory firing of certain bargaining unit members before the contract expired and failure to bargain over the effects of the contract's expiry.  Those charges are not part of this appeal.

**C.**

In the proceedings before the Board, the General Counsel sought several remedies, including an order requiring Google and Cognizant to bargain in good faith, an extension of the certification year and a make-whole remedy for employees. AWU joined those requests for relief but also asked the Board to require a bargaining schedule, notice reading, posting of employee rights, mandatory training and compensatory relief for AWU itself.

In January 2024, the Board issued a decision and order (D&O) concluding that Google and Cognizant had violated the Act by refusing to bargain and ordering them to bargain with the Union and post an employee rights notice.  J.A. 25–26.  The NLRB also construed the Union certification period to begin on the date that Google and Cognizant start to bargain in good faith.  J.A. 25 (citing *Mar-Jac Poultry Co.*, 136 N.L.R.B. 785 (1962)).    Because  ordering  a  make-whole  remedy  for

---

practice proceedings." *Can. Am. Oil Co. v. NLRB*, 82 F.3d 469, 471 n.1 (D.C. Cir. 1996) (citing *Boire v. Greyhound Corp.*, 376 U.S. 473, 476–77 (1964)).  An employer commits an unfair labor practice in violation of section 8(a)(5) of the Act by "refus[ing] to bargain collectively with the representatives of his employees."  29 U.S.C. § 158(a)(5).  A violation of section 8(a)(5) is also a violation of section 8(a)(1), which makes it unlawful for an employer to interfere with, restrain or coerce employees in the exercise of their statutory labor rights.  *NLRB v. Downtown Bid Servs. Corp.*, 682 F.3d 109, 112 n.1 (D.C. Cir. 2012).

employees would require overruling *Ex-Cell-O Corp.*, 185 N.L.R.B. 107 (1970), and creating a methodology for calculating such a remedy, the Board severed that issue and retained it for further consideration.

Days after the Board issued its D&O, all parties petitioned for review. Both Google and Cognizant challenge the joint-employer determination, the Union contests the scope of the remedy and the Board cross-applies for enforcement.

## II.

### A.

"Before reaching the merits, we must first address whether we have jurisdiction." *Planned Parenthood of Wis., Inc. v. Azar*, 942 F.3d 512, 516 (D.C. Cir. 2019) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). No party has raised mootness but "we have an independent obligation to ensure that appeals before us are not moot." *Id.* (internal quotation marks omitted). That is so because "[w]e have jurisdiction only over live cases or controversies." *Sands v. NLRB*, 825 F.3d 778, 782 (D.C. Cir. 2016) (citing U.S. CONST. art. III § 2, cl. 1). "An appeal should be dismissed as moot when, by virtue of an intervening event, a court of appeals cannot grant any effectual relief whatever." *Id.* (cleaned up) (quoting *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (per curiam)); *see also Pub. Citizen, Inc. v. FERC*, 92 F.4th 1124, 1128 (D.C. Cir. 2024) ("A case is moot if a decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.") (internal quotation marks omitted).

The Board and the Union seek to have the D&O enforced and Google and Cognizant seek to have the D&O vacated. However, the expiry of the Google-Cognizant contract means

that there is no longer any relationship between the two companies that could support the joint-employer finding upon which the D&O is premised. Granted, "the possibility of . . . a remedial notice usually keeps an unfair labor practice case from becoming moot, even if the parties resolve the underlying dispute." *Sands*, 825 F.3d at 782–83 (citing *Am. Fed'n of Gov't Emps., AFL–CIO, Loc. 3090 v. FLRA*, 777 F.2d 751, 753–54 n.13 (D.C. Cir. 1985)). That is so even if the injured employees no longer have an interest in the case—arguably as here, where no bargaining unit employees are still at Cognizant—because the union has a "derivative right" that gives it a "personal and particular ongoing interest in the posting." *Id.* at 783. But that scenario "assume[s] an ongoing relationship between the petitioner and the company . . . that committed a labor violation." *Id.* Here, the Google-Cognizant contract is over so there can be no ongoing relationship between AWU and the two entities *qua* joint employers of these bargaining unit employees.

Granted, we have also said that "changed circumstances" do not "[g]enerally" render "a Board order moot." *NLRB v. Maywood Plant of Grede Plastics*, 628 F.2d 1, 7 (D.C. Cir. 1980) (citing *NLRB v. Raytheon Co.*, 398 U.S. 25, 27–28 (1970) (applying voluntary-cessation doctrine to hold that compliance with NLRB order did not render case moot)). However, that remark came in the context of determining the remedies the Board could impose after the employer that had violated the Act sold the unionized plant to an unrelated entity. *See id.* We held that, although the NLRB could not order the seller to bargain with the union, it could order the seller to cease and desist from unfair labor practices and to mail a notice to its former employees or order the successor company to remedy the unfair labor practices. *Id.* (citing *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 176–77 (1973)). The Board's order could therefore be "modified" and still enforced. *Id.* at 7–8.

At oral argument and by letter relying on *Maywood Plant*, the NLRB offered to propose modifications to its order to reflect the changed circumstances. But in *Maywood Plant* the employer had engaged in the underlying unfair labor practice of orchestrating a decertification campaign and then unilaterally changing employment benefits. *Id.* at 4–5. The only unfair labor practice on review in this petition is Google's and Cognizant's refusal to bargain arising out of a test-of-certification case, and any joint-employer relationship is now over. The Union's counsel also highlighted that it alleged before the Board other unfair labor practices by Google and Cognizant but those are not before us. If the NLRB determines that other unfair labor practices occurred, it can readopt in part or in full its joint-employer findings for liability to run against Google as well as Cognizant.

Google and Cognizant along with the Board also contended at oral argument that the case is not moot because the Board could still impose a make-whole remedy for the failure to bargain if it decides to overturn *Ex-Cell-O* and promulgate a methodology for calculating such a remedy. However, there must be a "more-than-speculative chance" of that happening for the case not to be moot. *Pub. Citizen*, 92 F.4th at 1128. Given the "substantial uncertainty surrounding" the NLRB's internal deliberations on whether to overturn longstanding precedent and fashion a new remedy, "there is no reason to believe" that it will do so "in the foreseeable future," or that the Board would choose to do so in an otherwise moot case. *Id.* at 1130. The Google-Cognizant petitions and Board cross-applications for enforcement are therefore prima facie moot.

**B.**

The next question is whether "even if the case is superficially moot, it falls within two exceptions to the doctrine—the common one for 'actions capable of repetition yet evading review,' and the related but narrower one addressing a defendant's voluntary cessation of the [relevant] conduct." *Clarke v. United States*, 915 F.2d 699, 703 (D.C. Cir. 1990) (en banc). The parties opposing mootness—here, all parties—have the burden of proving that a mootness exception applies. *Reid v. Hurwitz*, 920 F.3d 828, 832 (D.C. Cir. 2019) (citing *Honeywell Int'l v. Nuclear Regul. Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010)).

The capable-of-repetition-yet-evading-review exception requires that (1) the challenged action be too short in duration to be fully litigated before its cessation or expiration and (2) there be a reasonable expectation that the same complaining party would face the same action again. *See Clarke*, 915 F.2d at 704 (citing *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)). "In estimating the likelihood of an event's occurring in the future, a natural starting point is how often it has occurred in the past." *Id.* This is the only time that the NLRB has applied its rule and, "with only one instance, there is no way to generalize." *Id.* at 705. As in *Clarke*, we have no reason to expect to see this joint-employer relationship again, especially because Google and Cognizant can avoid problems by drafting future contracts to steer clear of the joint-employer line. *Id.* at 704–05.

Moreover, "a legal controversy so sharply focused on a unique factual context will rarely present a reasonable expectation that the same complaining party would be subjected to the same actions again." *J.T. v. District of Columbia*, 983 F.3d 516, 524 (D.C. Cir. 2020) (cleaned up) (citing *PETA v. Gittens*, 396 F.3d 416, 424 (D.C. Cir. 2005));

*see also United Bhd. of Carpenters v. Operative Plasterers' & Cement Masons' Int'l Ass'n*, 721 F.3d 678, 689 (D.C. Cir. 2013) ("In an ordinary contract dispute, the uniqueness of those terms might make the case so 'highly fact-specific' that it would not likely recur."). The joint-employer issue here involves a unique factual context, as shown by the four days of hearings before a Board hearing officer. In any event, this precise joint-employer question may yet be fully litigated if the NLRB were to determine that there was another unfair labor practice relating to this Google-Cognizant contract and then readopted its joint-employer decision to find Google liable as well as Cognizant. *Cf. Alvarez v. Smith*, 558 U.S. 87, 93–94 (2009) (holding in moot case where plaintiffs sought declaratory and injunctive relief that challenged practices did not evade review because other parties could bring damages actions). Therefore, the capable-of-repetition-yet-evading-review exception does not apply.

The voluntary-cessation doctrine focuses on preventing a party "from manipulating the judicial process by voluntarily ceasing the complained of activity, and then seeking a dismissal of the case, thus securing freedom to 'return to his old ways.'" *Clarke*, 915 F.2d at 705; *see also Sands*, 825 F.3d at 782–85 (holding stringent standard for overcoming voluntary-cessation doctrine was met after union refunded employee's dues and there was no reason to conclude employee would return to store). Here, the Regional Director issued the DDE on March 3, 2023, around the time of year when—until that year—Google and Cognizant had been renewing their contract on an annual basis. The coincidental timing is troubling. However, we have said that the termination of a contract "that expired of its own terms cannot be viewed as cessation of conduct," even if the contract previously had "brief extensions." *Clarke*, 915 F.2d at 705. Essentially, Google and Cognizant "shot an arrow into the air, and it fell to

earth. It stretches the words beyond recognition to say that [they] 'voluntarily ceased' anything merely because [they] refrained from shooting some more arrows after the first landed." *Id.*

The voluntary-cessation doctrine, moreover, "does not apply automatically whenever the prospect of mootness is raised by a party's voluntary conduct. Instead, courts have declined to apply the doctrine when the facts do not suggest any 'arguable manipulation of our jurisdiction.'" *Pub. Citizen*, 92 F.4th at 1128 (citing *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 (2001)). Here, as in *Public Citizen* and *City News*, the parties that allegedly voluntarily ceased the conduct "oppose[] mootness," which counsels against applying the exception. *Id.* at 1129. That we raised mootness sua sponte "further mitigates any possibility that [Google and Cognizant are] attempting to manipulate our jurisdiction." *Id.* Thus, no mootness exception applies.

## C.

Because the case is moot, we must next decide whether to vacate the Board's order. *See Sands*, 825 F.3d at 785. The "established practice" if a case is moot is "to reverse or vacate the judgment below." *Id.* (quoting *Humane Soc'y of U.S. v. Kempthorne*, 527 F.3d 181, 184 (D.C. Cir. 2008)). That practice "applies equally to unreviewed administrative orders." *Id.* (citing *A.L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 329 (1961)). The purpose of vacatur "is to clear the path for future litigation of the issues and eliminate a judgment review of which was prevented through happenstance." *Id.* (cleaned up) (quoting *U.S. Bancorp Mortg. Co. v. Bonner*, 513 U.S. 18, 22–23 (1994)).

"Because vacatur is equitable in nature, we look to notions of fairness when deciding whether to use the remedy." *Id.*

Courts usually vacate a judgment if mootness is the result of "circumstances unattributable to any of the parties" or "the unilateral action of the party who prevailed in the lower court." *Bancorp*, 513 U.S. at 23. However, "vacatur is typically inappropriate" when the party that lost below "'voluntarily forfeited' a remedy in court" by taking action to moot the case. *Sands*, 825 F.3d at 785 (quoting *Bancorp*, 513 U.S. at 22–25). The *Bancorp* rationale "is that litigants should not be able to manipulate the judicial system" by "rolling the dice" below and then using vacatur to "wash away any unfavorable outcome." *Humane Soc'y*, 527 F.3d at 186 (alterations omitted) (quoting *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 351 (D.C. Cir. 1997)). We have "interpreted *Bancorp* narrowly," weighing whether "a litigant is attempting to manipulate the courts to obtain the relief it was not able to win [below]." *Id.* at 185, 188.

Put otherwise, denying vacatur when "the [losing party] has caused the [mootness]" is "only applying a milder version of the voluntary-cessation doctrine: the case is not live enough for adjudication on the merits, but *because of fears of manipulation by the losing party* the court denies it the benefit of vacatur." *Clarke*, 915 F.2d at 707 (emphasis added). For the reasons explained above, "*no* version of the voluntary cessation doctrine is applicable here." *Id.* The Google-Cognizant contract expired on its own terms. And neither Google nor Cognizant raised mootness—indeed, all parties opposed mootness at oral argument. *See Alvarez*, 558 U.S. at 91, 97 (vacating judgment below in case mooted by resolution of state court proceedings where Court raised mootness sua sponte and both parties argued against it at oral argument).

Finally, vacatur will "open[] the door to reconsideration of the merits of the legal issues in this case"—namely, the correctness of the joint-employer determination—thereby

"serv[ing] the public interest." *Sands*, 825 F.3d at 786. Accordingly, we vacate the Board's order.

## III.

We next consider the Union's separate petition for review of the NLRB's remedies in this case. AWU argues that the Board erred by severing for later resolution the question of monetary relief for the bargaining unit employees and by denying AWU's requests for additional non-monetary and monetary relief without explanation. We lack jurisdiction to address the first argument. As to the second argument, the Union's requests for prospective relief beyond what the Board granted are moot because the contract is over and the Union is incorrect that the Board abused its discretion by not granting retrospective monetary relief to the Union itself.

## A.

The Union argues for the first time in its petition for review that the NLRB erred by severing the employee make-whole remedy issue for further consideration. But "[o]ur jurisdiction is limited in the following respect: 'No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.'" *United Food & Com. Workers Union, Loc. 400 v. NLRB*, 989 F.3d 1034, 1037 (D.C. Cir. 2021) (quoting 29 U.S.C. § 160(e)); *see also Chevron Mining, Inc. v. NLRB*, 684 F.3d 1318, 1328–30 (D.C. Cir. 2012) (explaining that 29 U.S.C. § 160(e) is jurisdictional).

AWU failed to move for reconsideration of the Board's decision, preventing us from reviewing this objection unless extraordinary circumstances excuse that failure. *See Cobb Mech. Contractors, Inc. v. NLRB*, 295 F.3d 1370, 1377–78,

(D.C. Cir. 2002) (citing *Int'l Ladies' Garment Workers' Union v. Quality Mfg. Co.*, 420 U.S. 276, 281 n. 3 (1975)). In response, the Union contends that we may nevertheless exercise review because it is challenging "the Board's procedural move" to sever the remedy, which does not implicate "the sort of substantive labor law question the Board must address in the first instance." AWU Pet'rs Reply Br. 9.

The Union relies on *SSC Mystic Operating Co. v. NLRB*, 801 F.3d 302 (D.C. Cir. 2015), in which we reaffirmed that "a challenge to agency action based on the agency's lack of authority to take any action at all need not be raised below and may be made for the first time on appeal." *Id.* at 308; *see also Noel Canning v. NLRB*, 705 F.3d 490, 497 (D.C. Cir. 2013) (holding that "questions that go to the very power of the Board to act and implicate fundamental separation of powers concerns . . . are governed by the 'extraordinary circumstances' exception to the 29 U.S.C. § 160(e) requirement"). But the Union is not challenging the NLRB's *authority* to sever a remedy for further consideration; instead, it is arguing that the Board "acted arbitrarily by doing so." AWU Pet'rs Reply Br. 8–9. *SSC Mystic* is therefore inapposite and we must dismiss that portion of AWU's petition.

**B.**

In addition to the remedies requested by the General Counsel, the Union asked the NLRB to impose a bargaining schedule, notice reading, posting of employee rights and mandatory training as well as to award prospective bargaining-related costs and retrospective compensatory relief for the Union itself. The Union's requests for prospective remedies are mooted by the contract's expiry for the reasons explained above, which the Union's counsel appeared to concede at oral argument. That leaves only the retrospective remedy of

compensatory relief for AWU itself—specifically, a request for attorneys' fees and costs as well as damages for reputational and other harms—to address.

Because "the choice of remedies is primarily within the province of the Board," we review its choice for abuse of discretion. *Hosp. of Barstow, Inc. v. NLRB*, 897 F.3d 280, 290 (D.C. Cir. 2018) (quoting *United Steelworkers of Am. v. NLRB*, 376 F.2d 770, 773 (D.C. Cir. 1967)); *see also Fallbrook Hosp. Corp. v. NLRB*, 785 F.3d 729, 738 (D.C. Cir. 2015) ("The Board's discretion in fashioning remedies under the Act is extremely broad and subject to very limited judicial review."). The abuse of discretion standard applies both to protests that the NLRB "goes too far" and that it "does not go far enough." *United Steelworkers*, 376 F.2d at 772.

In support of its argument that the Board abused its discretion as to those requested remedies, the Union relies primarily on *UAW v. NLRB*, 455 F.2d 1357, 1369 (D.C. Cir. 1971). In that case, UAW asked for access to the company's plant to speak to members, use of bulletin boards and reimbursement of negotiation and litigation costs. *Id.* A footnote to the Trial Examiner's decision stated that UAW's "request in its brief that Respondent be required to reimburse it for costs in attempting to negotiate an agreement and for prosecuting this case is rejected as improper or unnecessary to effectuate the purposes of the Act." *Id.* We held that such a "conclusory statement, standing alone, does not satisfy section 557 of the Administrative Procedure Act," which requires stating "the reasons or basis" for an agency's conclusions. *Id.* (citing 5 U.S.C. § 557(c)(A)). "Although the requested relief is unusual, that alone does not excuse the failure to justify its denial." *Id.* at 1370; *see also Textile Workers Union of Am. v. NLRB*, 475 F.2d 973, 976 (D.C. Cir. 1973) (per curiam) (granting petition for review and remanding where Board failed

to explain why employer's "history of many years of obstinance" did not "warrant the broader relief that the Union ha[d] requested").

However, *UAW* was not a standard test-of-certification case, in which the "usual order" is to require bargaining and posting of a notice. *NLRB v. Jones & Laughlin Steel Corp.*, 331 U.S. 416, 420 (1947) (citing *Jones & Laughlin Steel Corp.*, 53 N.L.R.B. 1046, 1047 (1943)). Instead, the Board had found that the employer had engaged in numerous violations of sections 8(a)(1), 8(a)(3) and 8(a)(5) of the Act. *See UAW*, 455 F.2d at 1362. Equally, in *Textile Workers* the Court emphasized that the NLRB's remedy focused too narrowly on the facts of that particular case despite the employer's "history of recalcitrance." 475 F.2d at 976. There are no similar circumstances here, despite AWU's bald assertion that Google's and Cognizant's conduct is "egregious." AWU Pet'rs Br. 32. Thus, the Union has not shown "that the traditional relief provided here will be so ineffective to enforce the policies of the Act as to be insufficient as a matter of law." *Amalgamated Clothing Workers of Am. v. NLRB*, 371 F.2d 740, 746 (D.C. Cir. 1966).

Indeed, the Board imposed the standard remedies, ordering Google and Cognizant to bargain with the Union and to post a notice of employee rights and construing the certification period to begin on the date that Google and Cognizant start to bargain in good faith. "Having ordered the customary remedies for test-of-certification cases and severed the [monetary relief] matter for future consideration, [the NLRB] decline[d] to order . . . the additional remedies sought by the Union." J.A. 26 n.6. The Board was not obligated to explain its decision not to go beyond traditional relief. *Nat'l Ass'n of Letter Carriers, AFL–CIO, Branch 3126 v. NLRB*, 281 F.3d 235, 238 (D.C. Cir. 2002) ("A standard remedy . . . does not have to be explained

anew in every case; it is the norm."). Accordingly, the Board did not abuse its discretion.

\* \* \*

For the foregoing reasons, we dismiss Google's and Cognizant's petitions and the NLRB's cross-applications for enforcement as moot and we vacate the Board's D&O. Further, we dismiss as jurisdictionally barred the part of AWU's petition seeking review of the Board's decision to sever the issue of a make-whole remedy as to the bargaining unit employees and dismiss as moot those parts of AWU's petition requesting prospective remedies. We deny the AWU's request for retrospective compensatory relief for the Union itself.

*So ordered.*