# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued January 30, 2025          Decided May 9, 2025

No. 20-5320

ANGE SAMMA, ET AL.,
APPELLEES

v.

UNITED STATES DEPARTMENT OF DEFENSE AND
PETE HEGSETH, IN HIS OFFICIAL CAPACITY AS SECRETARY OF
DEFENSE,
APPELLANTS

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-01104)

---

*Sean R. Janda*, Attorney, U.S. Department of Justice, argued the cause for appellants. With him on the briefs were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, at the time the brief was filed, and *Sharon Swingle*, Attorney.

*Scarlet Kim* argued the cause for appellees. With her on the briefs were *Arthur B. Spitzer*, *Brett Max Kaufman*, and *Michelle Fraling*.

*Tacy F. Flint* and *Tommy Hoyt* were on the brief for *amici curiae* American GI Forum, at al. in support of appellees.

*Douglas W. Baruch*, *Jennifer M. Wollenberg*, and *Kayla Stachniak Kaplan* were on the brief for *amici curiae* American Immigration Council, et al. in support of appellees.

Before: HENDERSON and PAN, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* Henderson.

Concurring opinion filed by *Circuit Judge* PAN.

KAREN LECRAFT HENDERSON, *Circuit Judge*: This case involves a challenge to the authority of the Department of Defense (DoD or Department) to impose time-in-service requirements for expedited naturalization. Under the Immigration and Nationality Act (INA), noncitizens who "served honorably" in the U.S. military are eligible for an expedited path to naturalization under 8 U.S.C. § 1440.

Historically, DoD certified noncitizens' honorable service for naturalization purposes without imposing a time-in-service requirement, with certifications often granted during basic training. But in 2017 DoD issued a policy requiring a certain minimum time in service before it considered certifying honorable service under section 1440—180 days for active-duty personnel and one year for reservists. In 2020, the plaintiffs—representing a class of noncitizen servicemembers—challenged the 2017 policy under the Administrative Procedure Act. After the district court granted summary judgment to the plaintiffs and while this appeal was pending, DoD rescinded the policy at issue. It has not introduced a replacement policy.

The issue before us is whether the case is moot in light of the Department's rescission of the challenged policy. Because we believe it is moot, we dismiss the appeal. And because there is no indication that DoD rescinded the policy to evade review, we also vacate the judgment of the district court.

**I.**

**A.**

Certain noncitizens are qualified to serve in the U.S. armed forces if, for example, they are lawful permanent residents or have critical skills or expertise vital to the national interest that they will use in their primary daily duties. *See* 10 U.S.C. § 504. There are two paths to expedited naturalization for noncitizens serving in the U.S. military.

First, a noncitizen who meets certain qualifications and who has "served honorably at any time in the armed forces of the United States for a period or periods aggregating one year" is eligible to apply for naturalization. 8 U.S.C. § 1439(a). To establish his honorable service under this provision, an applicant is required to provide "a certified statement from the proper executive department for each period of his service upon which he relies for the benefits of this section, clearly showing that such service was honorable . . . ." *Id.* § 1439(b)(3).

Second, a noncitizen who meets certain qualifications and who "has served honorably as a member of the Selected Reserve of the Ready Reserve or in an active-duty status in the military, air, or naval forces of the United States" during specified wartime periods, or during any period designated by the President as one in which the military is engaged in armed conflict, may apply for naturalization. 8 U.S.C. § 1440(a). The "executive department under which such person served shall

determine whether persons have served honorably." *Id.* On July 3, 2002, President George W. Bush issued an executive order declaring the period beginning on September 11, 2001, to be a period in which the U.S. Armed Forces were engaged in armed conflict with a hostile foreign force. *See* Exec. Order No. 13,269, 67 Fed. Reg. 45,287 (July 8, 2002). That period of hostilities remains ongoing.

A noncitizen is ineligible to apply for citizenship under section 1439 or section 1440 if he has already been separated from service under other-than-honorable conditions, *see* 8 U.S.C. §§ 1439(a), 1440(a), and a noncitizen who obtains citizenship under either provision may be denaturalized if he is separated under other-than-honorable conditions before he has served honorably for five years, *id.* §§ 1439(f), 1440(c).

Naturalization authority under the Act is vested with the Attorney General of the United States. 8 U.S.C. § 1421(a). By regulation, the Attorney General has designated the Director of the U.S. Immigration and Naturalization Service (USCIS) to administer that authority. 8 C.F.R. §§ 1.2, 310.1. Using Form N-426, noncitizen servicemembers applying for naturalization with USCIS must seek certification from their military branch as to the type and character of their service. *See* 8 C.F.R. § 329.4; J.A. 139-43 (Form N-426). An applicant's eligibility for expedited naturalization under section 1439 or section 1440 is predicated on receiving certification from his military branch. *See* 8 C.F.R. § 329.4.

**B.**

In October 2017, the Department of Defense issued a policy on certifying noncitizen servicemembers' service for use by USCIS. J.A. 70-73 (Policy). The Policy introduced procedural requirements for those who joined the armed forces on or after the date of issuance. J.A. 71. In order to receive

DoD's N-426 certification under the new policy, those servicemembers had to meet three criteria: (1) they could not be the subject of any legal or disciplinary action; (2) they had to have completed certain background investigation and suitability vetting; and (3) they had to meet specific time-in-service requirements. J.A. 71-72. Under the third condition, applicants had to complete "basic training" and either 180 consecutive days of active-duty service or one year of Selected Reserve service before receiving an honorable-service certification. *Id.*

## C.

On April 28, 2020, six noncitizen servicemembers, on their own behalf and on behalf of a putative class, sued DoD, claiming that the Policy was unlawfully preventing them from obtaining certified N-426s and submitting applications for naturalization. J.A. 25. The plaintiffs sued under the APA, challenging the Policy as arbitrary and capricious and otherwise not in accordance with law, 5 U.S.C. § 706(2)(A); in excess of statutory jurisdiction, *id.* § 706(2)(C); resulting in unlawfully withheld and unreasonably delayed agency action, *id.* § 706(1); and enacted without notice and comment, *id.* §§ 553, 706(2)(D). J.A. 25. The district court certified a plaintiff class defined as: (1) noncitizens serving in the U.S. military; (2) who were subject to the Policy; and (3) who had not received a certified N-426 Form. J.A. 66-67.[1]

The district court granted summary judgment to the plaintiffs. 486 F. Supp. 3d 240 (D.D.C. 2020). It first determined that the Policy was reviewable under the APA.

---

[1] The district court also excluded servicemembers who were part of a different certified class and one potential plaintiff who had separately sought and been denied relief in another court. *See* J.A. 67-68.

*Id.* at 261-64.  It then found that the Policy was arbitrary and capricious and contrary to law and that DoD's refusal to certify an N-426 for a noncitizen who had served one day of qualifying service constituted agency action unlawfully withheld.  *Id.* at 264-80.  The court determined that DoD's role in certifying Form N-426s is purely ministerial and thus § 1440 does not authorize it to promulgate time-in-service requirements for certification.  *Id.* at 280.  It declined to reach the notice-and-comment issue.  *Id.* at 280 n.43.  Based on those findings, the court vacated the Policy's time-in-service requirement and enjoined DoD from withholding certified N-426 Forms based on that Policy.  J.A. 64.  It ordered DoD to certify or deny any submitted N-426 Forms within thirty days.  J.A. 64-65.[2]

DoD timely appealed.  After several motions requesting extensions to the briefing schedule, DoD issued a memorandum rescinding the Policy, noting that it was "currently reconsidering" the time-in-service requirements.  DoD 28(j) Letter at 2 (June 23, 2021).  Soon after, DoD moved to hold its appeal in abeyance while it considered changes to its policies.  That motion was granted.  For the next three years, between August 2021 and June 2024, DoD filed eighteen status reports indicating that it was continuing to evaluate whether to issue new guidance.  In June 2024, we granted appellees' motion to establish a briefing schedule and end abeyance.  Clerk's Order, June 26, 2024.  To date, DoD has not issued any new guidance on a time-in-service requirement for certifying N-426 Forms.

---

[2] The district court drew a distinction between DoD's authority to define "honorable service" internally or at discharge—finding such decisions to be "squarely within the province of the military"—and using such a definition for the purpose of naturalization, which it understood to involve different considerations that were beyond the military's responsibilities.  *See* 486 F. Supp. 3d at 263, 269-71.

**II.**

**A.**

Article III of the Constitution grants federal courts power to "adjudicate only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). Because mootness poses a jurisdictional bar, we must assure ourselves that the case is not moot before considering its merits. *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983). A case is moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013); *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997) (federal courts have no power to "decide questions that cannot affect the rights of litigants in the case before them" (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975))). "'Even where litigation poses a live controversy when filed,' a federal court must 'refrain from deciding the dispute if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Pub. Citizen, Inc. v. FERC*, 92 F.4th 1124, 1127-28 (D.C. Cir. 2024) (quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc)) (alterations omitted).

As we have repeatedly recognized, "the government's abandonment of a challenged regulation is just the sort of development that can moot an issue." *Friends of Animals v. Bernhardt*, 961 F.3d 1197, 1203 (D.C. Cir. 2020) (citing *Gulf Oil Corp. v. Brock*, 778 F.2d 834, 840 (D.C. Cir. 1985) (collecting cases)); *see also Akiachak Native Cmty. v. Dep't of Interior*, 827 F.3d 100, 106 (D.C. Cir. 2016) ("Because that [challenged] regulation no longer exists, we can do nothing to affect [plaintiff's] rights relative to it, thus making this case

classically moot for lack of a live controversy."); *Larsen v. U.S. Navy*, 525 F.3d 1, 2 (D.C. Cir. 2008) ("[B]ecause the Navy has long since eliminated the challenged policy, plaintiffs' challenge is moot.").

However, an exception to mootness can apply if one party voluntarily ceases the challenged activity. *Pub. Citizen*, 92 F.4th at 1128. In such circumstances, "the case remains live unless it is 'absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 190 (2000)). "The voluntary-cessation doctrine, however, does not apply automatically whenever the prospect of mootness is raised by a party's voluntary conduct." *Id.* "Instead, courts have declined to apply the doctrine when the facts do not suggest any 'arguable manipulation of our jurisdiction.'" *Id.* (quoting *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 (2001)); *see also Alaska v. Dep't of Agric.*, 17 F.4th 1224, 1229 (D.C. Cir. 2021) ("The established law of this circuit is that the voluntary cessation exception to mootness has no play when the agency did not act in order to avoid litigation." (cleaned up)). A suggestion of manipulation is even less likely if the party who ceased the challenged activity opposes mootness. *Pub. Citizen*, 92 F.4th at 1129.

**B.**

We conclude that this appeal is moot and the voluntary-cessation doctrine does not apply. DoD's arguments to the contrary are unpersuasive.

First, no decision by this court would do anything to affect the Policy or the plaintiff class members' rights relative to it, "making this case classically moot for lack of a live controversy." *Akiachak*, 827 F.3d at 106. For instance, an

order declaring that the Policy was in fact lawful would affect neither the plaintiffs, who currently face no time-in-service requirements for certification, nor DoD, which has already rescinded the Policy.

Even so, DoD asserts that there is a "more-than-speculative chance" that a decision by this court could affect the parties' rights because the Department is "actively considering whether to impose new time-in-service requirements." DoD Suppl. Br. 7. That assertion, however, stops short of confirming that the Department in fact will or intends to impose such a policy in the future. The Department's position is further undercut by its three years of inaction. Even if it did adopt a new policy, there is no indication that it would be the same policy so that an order of this court would have a meaningful effect. We will not speculate on the form and content of some uncertain future policy to render an advisory opinion as to the lawfulness of a time-in-service requirement generally. That is precisely the scenario that the mootness doctrine is intended to avoid. *See, e.g.*, *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992).

Second, the voluntary-cessation doctrine has no application here. Adopting an unusual position, DoD argues that it should be held to the heavy burden imposed by that doctrine, barring mootness. In its view, because it voluntarily rescinded the Policy, it bears the burden to show that it would not reimpose the 2017 Policy and—because it insists that it will impose some kind of replacement policy in the future—it cannot meet that burden. But that burden is imposed only if there is some evidence that the party sought to manipulate the court's jurisdiction, *see Pub. Citizen*, 92 F.4th at 1128, and nothing suggests that DoD did so. This is not a case in which a party sought to strategically avoid judicial review by ceasing

a challenged activity. Although it is at least possible that DoD might at some point seek to implement a similar policy, it does not represent that it intends to revert to the policy at issue here and we cannot issue an advisory opinion on an unknowable future policy.

DoD alternatively suggests that the case is not moot because the district court's judgment enjoins the Department "from withholding certified Form N-426s from any class member based on a failure to complete the Minimum Service Requirements." J.A. 64. In its view, that language could be interpreted to impose an ongoing requirement on the Department. That is plainly incorrect. The district court's injunction is limited to *class members*, who are in turn defined as those subject to the October 2017 Policy. J.A. 64 & n.1, 66-69. Because no one is subject to the 2017 Policy in light of its rescission, the class is empty. The injunction, therefore, does not impose any further restraint on DoD.

In sum, because the Policy has been rescinded, no order from this court would have any meaningful effect on the rights of the parties and the case is moot. Equally, no exception to mootness applies.

## C.

Because the case is moot, we must separately decide whether the district court's judgment should be vacated. Vacatur is ordinarily appropriate once a case is moot because it "clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40 (1950). We regularly follow that "well settled practice." *Acheson Hotels v. Laufer*, 601 U.S. 1, 5 (2023) (per curiam); *e.g.*, *United States v. China Telecom (Americas) Corp.*, 55 F.4th 939, 944 (D.C. Cir. 2022).

That said, vacatur is an equitable remedy. If mootness results from the voluntary conduct of the party seeking relief, vacatur is not automatic. *See U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 24-26 (1994). But the Supreme Court has recognized that "exceptional circumstances" may nonetheless justify vacatur despite voluntary mootness. *Id.* at 29; *cf. Azar v. Garza*, 584 U.S. 726, 729 (2018) (per curiam) (emphasizing that vacatur turns on the specific circumstances of the case). And it has left open whether a different rule may apply if the government moots a case by modifying a challenged policy. *See Bancorp*, 513 U.S. at 25 n.3; *Munsingwear*, 340 U.S. at 40-41. The Court has also continued to follow its standard *Munsingwear* practice if there is no indication that a litigant "abandoned her case in an effort to evade [] review." *Acheson Hotels*, 601 U.S. at 5. In other words, *Bancorp* does not erect a categorical bar to vacatur when voluntary action moots the case; instead, courts must apply equitable principles flexibly. *See id.* at 18-19 (Jackson, J., concurring).

Here, although the Department's rescission of the challenged policy mooted the case, there is also no indication it acted to sidestep appellate review. The Department opposes mootness and nothing in the record suggests acquiescence in the judgment below. *Cf. Alvarez v. Smith*, 558 U.S. 87, 97 (2009); *Pub. Citizen*, 92 F.4th at 1129. In such circumstances, the Supreme Court has routinely granted vacatur to avoid binding the government to a judgment it had no opportunity to challenge on the merits. *See, e.g., Mayorkas v. Innovation Law Lab*, 141 S. Ct. 2842 (2021) (mem.); *Biden v. Feds for Med. Freedom*, 144 S. Ct. 480 (2023) (mem.). For example, in *Biden v. Feds for Medical Freedom*, President Biden revoked a challenged Executive Order as part of a broader unwinding of measures put into place during the acute phase of the COVID-19 pandemic, after determining that it was no longer necessary.

And in *Mayorkas v. Innovation Law Lab*, the change in policy was also due to a change in administrations. The policies in question were implemented by the first Trump administration and subsequently terminated by the Biden administration, causing mootness. The Supreme Court did not address *Bancorp* in either case.

In short, this is not a case in which DoD forfeited its appellate rights or sought to preserve an unreviewed ruling. In addition, the balance of equities favors vacatur to allow future relitigation of the issue. *See Munsingwear*, 340 U.S. at 40. Accordingly, vacatur is appropriate here.

\* \* \*

For the foregoing reasons, we vacate the district court's judgment and remand with instructions to dismiss the case as moot.

*So ordered.*

PAN, *Circuit Judge*, concurring:

I fully concur with the court's opinion, which vacates the district court's judgment after determining that the case became moot while this appeal was pending. I agree that there is "no indication that [the Department of Defense] acted to sidestep appellate review," and that vacatur under such circumstances is "routinely granted . . . to avoid binding the government to a judgment it had no opportunity to challenge on the merits." *See* Op. at 11. I write separately to more explicitly address how our vacatur of the district court's judgment is supported by the Supreme Court's decision in *U.S. Bancorp Mortgage Company v. Bonner Mall Partnership*, 513 U.S. 18, 23–25 (1994).

The typical practice when a civil case becomes moot on appeal and a party asks for vacatur of "the judgment below" is to grant the request for vacatur in order to "clear[] the path for future relitigation." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–40 (1950). But the Supreme Court noted in *Bancorp* that the propriety of vacatur is an equitable determination that may turn on how the mootness came about. *See Bancorp*, 513 U.S. at 24–25. "The principal condition" to consider is "whether the party seeking relief from the judgment below caused the mootness by voluntary action." *Id.* at 24. A litigant should not be allowed to manipulate the judicial system by "roll[ing] the dice . . . in the district court" and then "wash[ing] away" any "unfavorable outcome" by strategically settling the case and then moving for vacatur of the judgment. *Bancorp*, 513 U.S. at 28. Thus, in *Bancorp*, where a non-prevailing, private party substantially caused mootness by settling the case while an appeal was pending, that party "forfeited [its] legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering [its] claim to the equitable remedy of vacatur." *Id.* at 25. By contrast, vacatur under *Munsingwear* remains appropriate when an appeal is "prevented through happenstance — that is to say, where a controversy presented for review has become moot due to

circumstances unattributable to any of the parties." *Id.* at 23 (cleaned up); *see also Munsingwear*, 340 U.S. at 40 (when review of a judgment is "prevented through happenstance," vacatur of the judgment preserves the rights of all parties and "none is prejudiced by a decision which in the statutory scheme was only preliminary").

The Supreme Court identified two considerations that might weigh in favor of vacatur even when the voluntary actions of a losing party cause mootness. First, the Court noted that "exceptional circumstances may conceivably counsel in favor of" vacatur in that situation, based on "equitable" factors. *Id.* at 29. Second, the Court recognized that under *Munsingwear*, vacatur could be appropriate where the government moots a case through its repeal of an administrative regulation. *Bancorp*, 513 U.S. at 25 n.3 ("We express no view on *Munsingwear*'s implicit conclusion that repeal of administrative regulations cannot fairly be attributed to the Executive Branch when it litigates in the name of the United States."); *see Munsingwear*, 340 U.S. at 40–41 (stating that the lower court judgment might have been vacated — even though an action by the Executive Branch had mooted the appeal — if the government had requested vacatur).

This court has never "squarely decided that *Bancorp*'s voluntary action exception [to the *Munsingwear* practice favoring vacatur] applies to executive branch action." *Humane Soc'y of U.S. v. Kempthorne*, 527 F.3d 181, 187 (D.C. Cir. 2008) (cleaned up). Rather than rely on exceptional circumstances or executive action, we have generally "interpreted *Bancorp* narrowly, weighing whether a litigant is attempting to manipulate the courts to obtain the relief it was not able to win below." *Alphabet Workers Union-Commc'n Workers of Am.*, *Local 9009 v. NLRB*, No. 24-1003, 2025 WL 1162314, at *5 (D.C. Cir. Apr. 22, 2025) (cleaned up); *cf. Am.*

*Family Life Assurance Co. of Columbus v. FCC*, 129 F.3d 625, 630 (D.C. Cir. 1997) (observing that "[t]he specific holding of *Bancorp*, concerning as it does settlements, has no application" to deciding whether to vacate an unreviewed agency order). That is the approach that the court takes in this case.

Yet, in my view, this case squarely presents whether *Bancorp*'s "voluntary action exception" should apply to the Executive Branch. *Kempthorn*, 527 F.3d at 187. In this case, the government was the non-prevailing party before the district court and sought to appeal, but the case became moot due to a policy change implemented by the government. The question we confront is whether the circumstances presented justify vacatur, even though the party seeking relief (the government) caused the mootness by voluntary action. *See Bancorp*, 513 U.S. at 24. I believe that both of *Bancorp*'s additional considerations are relevant here and either one supports vacatur. First, "the repeal of [the] administrative regulation[]" in this case cannot be "fairly attributed" to the Executive Branch, such that the government should "surrender[] the equitable remedy of vacatur," *id.* at 25 & n.3, because the change in policy that caused mootness was unrelated to this litigation and the government did not intend to forfeit its appellate rights in this case — indeed, it opposed mootness and continued to press its claims on appeal. Accordingly, mootness was not "voluntarily" caused in the relevant sense. Alternatively, the equities weigh in favor of vacatur because there is no indication that the Department acquiesced to the district court's judgment or acted to manipulate our jurisdiction; and we are faced with an "extraordinary circumstance[]": The Department has stated that the district court's judgment might constrain its decision-making regarding soldiers who serve in combat roles. *See id.* at 29; DoD Suppl. Br. 10, 12–17 (expressing concerns that the court's judgment will "constrain the [Department's] policymaking

discretion moving forward" and "preclude the [Department] from issuing new time-in-service requirements in the future," and noting that the injunction still binds the Department). Thus, a straightforward application of *Bancorp* supports vacatur of the district court's judgment in this case.